# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.:  16-CV-1696 W (NLS)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO REQUIRE PLAINTIFF TO POST A BOND [DOC. 27]** |

　　　　Pending before the Court is Defendants' motion to require Plaintiff to post a bond. [Doc. 27.]  The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons that follow, the Court **DENIES** Defendants' motion.

//
//
//
//
//
//
//
//

1

## I. BACKGROUND

This is a legal malpractice case over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*First Amended Complaint ("FAC")* [Doc. 16].) It arises out of an underlying action that began in 2013. (*Id.* [Doc. 16] ¶ 8.) On June 30, 2016, Plaintiff filed the Complaint against the law firm that previously represented her, an attorney at that law firm, and that attorney's associate. (*See Compl.* [Doc. 1].)

The First Amended Complaint ("FAC") alleges that, on the eve of trial, Plaintiff's former counsel informed her of a lack of confidence in his own abilities as a result of a 2015 car accident that caused him to suffer a traumatic brain injury from which he was still recovering at the time. (*See FAC* [Doc. 16] ¶¶ 1–20.) As a result, Plaintiff alleges that "Defendants put great pressure on [her] to settle the [underlying action] for far less than the amount Defendants originally told [her] the case was worth." (*See id.* [Doc. 16] ¶ 20.) Further, the FAC alleges that Defendants unjustifiably inflated their legal bills and then threatened to withdraw during critical settlement negotiations when she did not pay them within eleven days. (*See id.* [Doc. 16] ¶ 22.) According to the FAC, Defendants did, in fact, file a motion to withdraw with the Court during said settlement negotiations, which was granted. (*Id.* [Doc. 16] ¶¶ 26–27.) Plaintiff then hired a new attorney and settled the case several months later. (*See id.* [Doc. 16] ¶ 28.) Thereafter, despite a voluntary withdrawal from the matter, Defendants allegedly billed Plaintiff based on their original contingency agreement—for a settlement they did not arrange. (*See id.* [Doc. 16] ¶ 29.)

The FAC asserts five causes of action: (1) breach of contract; (2) fraud; (3) professional negligence; (4) breach of fiduciary duty; and (5) declaratory relief. (*FAC* [Doc. 16].)

In their twenty-page motion, Defendants now seek a Court order to require Plaintiff to post a bond in excess of $75,000 as a condition for her to maintain her action. (*Defs.' Mot.* [Doc. 27-1] 20:11–17.) In essence, they urge the Court to find a reasonable possibility, *ab initio*, that the McMillan Law Firm is entitled to recover for a settlement

another attorney achieved for Plaintiff after the McMillan Firm voluntarily withdrew from representing her over a fee dispute.  (*See FAC* [Doc. 16] ¶ 28; *July 2–3, 2015 e-mails* [Doc. 27-4, Exh. 3].)

## II. LEGAL STANDARD

"[T]he federal district courts have inherent power to require plaintiffs to post security for costs" and "follow the forum state's practice . . . especially . . . when a non-resident party is involved." Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994) (internal citation and quotation omitted).  "A judge may, upon demand of any party, where authorized by law and for good cause shown, require any party to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate." Civ. L.R. 65.1.2(a).  California law provides:

> **(a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding. For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.**

Cal. Civ. Proc. Code § 1030(a).

> **(b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding. The motion shall be accompanied by an affidavit in support of the grounds for the motion and by a memorandum of points and authorities. The affidavit shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding.**

Cal. Civ. Proc. Code § 1030(b).

The imposition of a costs bond is within the Court's discretion.  See Kourtis v. Cameron, 358 Fed. App'x 863, 866 (9th Cir. 2009)[1].  "To satisfy the requirements of section 1030, Defendants must produce sufficient evidence to demonstrate they have a

---

[1] Unpublished Ninth Circuit decisions are citable per Ninth Circuit Rule 36-3(b) and Fed. R. App. P. 32.1.

1  'reasonable possibility' of defeating each of Plaintiffs' claims, but no more." Gabriel
2  Techs. Corp. v. Qualcomm Inc., 2010 WL 3718848, at *5 (S.D. Cal. Sept. 20, 2010)
3  (Anello, J.) (quoting Cal. Civ. Proc. Code § 1030) (citing Kourtis, 358 Fed. App'x at
4  866).  As such, if Defendants do not show a reasonable possibility of defeating even one
5  of Plaintiff's claims, the Court must deny the motion.  See id.

### III. DISCUSSION

Defendants contend that the McMillan Law Firm has a reasonable possibility of succeeding on Plaintiff's cause of action for declaratory relief, for two reasons.

First, they contend that "it is a foregone certainty that [the firm] will prevail and receive at minimum, the $15,000" that corresponds with the amount they contend Plaintiff "has not disputed." (*Defs.' Mot.* [Doc. 27-1] 5:4–20.)  In support of this, they cite to a paragraph of Mr. McMillan's own declaration stating that Plaintiff "conceded that over $60,000 of the charges were appropriate and . . . conceded that she still owed [the firm] over $15,000 of undisputed charges." (*McMillan Decl.* [Doc. 27-2] ¶ 11.) They cite to two pages of a 74-page invoice, which McMillan's declaration apparently references as containing handwritten concessions—yet these do not appear in the invoice document itself.  (*Invoice* [Doc. 27-4, Exh. 4] 118–19 (docket pagination).)  Plaintiff obviously disputes the amount of the bill, as she filed a lawsuit seeking a declaration that she is entitled to the full amount of the settlement funds from the underlying action. (*FAC* [Doc. 16] ¶¶ 29–36, 63.)  Her opposition to the instant motion takes the same position.  (*Pl.'s Opp'n* [Doc. 28] 11:18–12:5.)  To the extent Defendants are trying to make a waiver argument here, they do not articulate that argument with any clarity.

Second, Defendants contend that they are likely to recover in quantum meruit for the value of services rendered per their contingency agreement with Plaintiff.  (*See Defs.' Mot.* [Doc. 27-1] 5:21–10:5.)

An attorney who justifiably withdraws "in adherence to ethical mandates" is entitled to recover attorneys' fees in quantum meruit—if, and only if, the withdrawing

attorney can show that "the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to . . . ethical imperatives under statute or State Bar rules[,]" and "counsel's withdrawal was [either] mandatory[,]" or the result of "the most compelling of permissive reasons[,]" as revealed by "heightened scrutiny."  See Estate of Falco, 188 Cal. App. 3d 1004, 1016, 1016 n.12 (1987); Rus, Milliband, & Smith v. Conkle & Olesten, 113 Cal. App. 4th 656, 676 (2003).  "It is unassailably unfair to allow [an attorney] to escape [the labor associated with a contingency recovery] absent the most compelling of permissive reasons—reasons that, as Falco indicated, must pass heightened scrutiny." Rus, 113 Cal. App. 4th at 676.  "[A]s a matter of policy, any other rule creates perverse incentives . . . . [t]he first attorney to represent a client would have reason to do as little as possible and then jump on the hint of first client noncooperation to maximize recovery with a minimum of hassle." Id. at 676 n.11.[2]  The decision of whether to award fees when an attorney voluntarily withdraws according to permissive withdrawal rules is within the discretion of the Court, subject to the standards described above.  See Falco, 188 Cal. App. 3d at 1016 n.12.

      McMillan voluntarily withdrew upon a fee dispute that arose when his client did not immediately pay in full a 74-page bill dated May 31, 2015 for $99,314.51 (with an outstanding balance of $59,689.27), which reflected line items dating back to February of that year.  (*See Jul. 2, 2015 e-mail Chain* [Doc. 27-4, Exh. 3]; *May 31, 2015 Invoice*

---

[2] Defendants' moving papers misstate the law on this point.  They inaccurately represent to the court that the two factors discussed above are merely: "whether: (1) the withdrawal was appropriate under the permissive withdrawal rules; [and] (2) [whether] the withdrawal was primarily based upon those rules, rather than something else . . . ." (*Defs.' Mot.* [Doc. 27-1] 6:4–5.)

Conspicuously absent in Defendants' brief is any reference to the requirement that "the overwhelming and primary motivation for counsel's withdrawal [be] the obligation to adhere to . . . ethical imperatives under statute or State Bar rules[,]" or that permissive withdrawal be the result of "the most compelling of . . . reasons" as revealed by "heightened scrutiny." (*Defs.' Mot.* [Doc. 27-1] 6:4–5.)  See Falco, 188 Cal. App. 3d at 1016, 1016 n.12; Rus, 113 Cal. App. 4th at 676.

At best, defense counsel's brief paints an incomplete picture of the law in this area.

5

[Doc. 27-4, Exh. 4].)  When his client proposed to arrange monthly payments, McMillan sent her a one-word e-mail: "Unacceptable."  (*See Jul. 2, 2015 e-mail Chain* [Doc. 27-4, Exh. 3].)

McMillan then announced an intention to "draw down on expenses advanced[,]" including for his client's use of a copy machine and for the production of trial exhibits.  (*July 2, 2015 e-mail* [Doc. 27-4, Exh. 3].)  He proceeded to criticize his client for having "taken an inflexible and unreasonable settlement position" and tell her that she "should have been more interested in settling, sooner."  (*Id.*)  Finally, in response to a message from his client, on July 3, 2015, McMillan composed the following response:

> **I allowed you to get $60k into me.  I am the latest in a line of gullible lawyers . . . . Me letting you get into me was an extremely foolish mistake.  It was entirely foreseeable.  But I am not going to compound it by "hanging on" and listening to more of your blandishments.  Maybe you can find a really good attorney, i.e., Number Four who will listen to your story and *advance fees for you*.**
>
> **I actually am very stupid to have trusted you and to have allowed you to put me in this position.**
>
> **That you were going to draw some arbitrary line in the sand, and *then not pay*, was foreseeable when it became clear that you intended to foist the tedious work of preparing binders off on me and staff.  That was work that you were capable of doing and rather had us do.  That was never my intention that this take place . . . .**
>
> **I really don't care about your excuses, i.e., your effort to "get through the bill."  That is all just more stalling.  You had lots of time before that . . . .**
>
> **What you don't realize is that I have concluded that no matter what deal I made or would make with you, *you would try to cheat me out of the payment*.  Even if this case settled for $1 million, *you'd still try to take more than what the contract allows you. That is just how you are* . . . .**

(*Jul. 3, 2017 e-mail* [Doc. 27-3, Exh. 3] (emphasis added).)

The foregoing e-mails indicate that McMillan voluntarily withdrew over a fee dispute.  (*Jul. 3, 2017 e-mail* [Doc. 27-3, Exh. 3].)  Another attorney then procured Brightwell's settlement in the underlying action.  (*See* FAC [Doc. 16] ¶ 28.)  According to the evidence filed with the Court at this time, it would appear that "the overwhelming and primary motivation for McMillan's withdrawal" was not "the obligation to adhere to

1  . . . ethical imperatives[,]" but rather the desire for immediate payment.³ See Falco, 188
2  Cal. App. 3d at 1016.  This is not "the most compelling of permissive reasons" pursuant
3  to the heightened scrutiny of Falco.  See Rus, 113 Cal. App. 4th at 676; Falco, 188 Cal.
4  App. 3d at 1016 n.12.

   Defendants do not show a reasonable possibility of success on Plaintiff's cause of
   action for declaratory relief.  The motion will be denied.  See Cal. Civ. Proc. Code §
   1030(b); Gabriel Techs. Corp., 2010 WL 3718848, at *5.

### IV.   CONCLUSION & ORDER

   Defendants' motion to require Plaintiff to post a bond is **DENIED**.  [Doc. 27.]

   **IT IS SO ORDERED.**

Dated:  May 12, 2017

_____
Hon. Thomas J. Whelan
United States District Judge

---

³ As Defendants note in their motion, California Rule of Professional Conduct 3-700(C)(1)(f) delineates a limited exception from the restrictions on voluntary withdrawal, in the event "[t]he client . . . breaches an agreement or obligation to the [attorney] as to expenses or fees"—subject to other limitations set forth in Rule 3-700(A)–(D).

It does not follow from the ostensible absence of an ethical prohibition on withdrawal that McMillan's overwhelming motivation in withdrawing was to comply with an ethical imperative.