Scott A. McMillan, CBN 212506
Lauren Hanley-Brady, CBN 299644
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, CA 91941-5230
Tel (619) 464-1500 x 14
Fax (619) 828-7399
email: scott@mcmillanlaw.us

Attorneys for Counterclaimant and Defendant, The McMillan Law Firm, APC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, APC, a professional corporation, SCOTT A. MCMILLAN, an individual, MICHELLE D. VOLK, an individual, and DOES 1 through 25, inclusive, Defendants. | Case No.  16-cv-01696-W-NLS<br><br>**COUNTERCLAIMANT THE MCMILLAN LAW FIRM, APC'S OPPOSITION TO COUNTERDEFENDANT'S MOTION TO DISMISS THE AMENDED COUNTERCLAIM**<br><br>[No Oral Argument Pursuant to Civ. Local Rule 7.1(d)(1)] |
| THE MCMILLAN LAW FIRM, APC, a California Professional Corporation,<br><br>    Counterclaimant,<br><br>v.<br><br>L. LEE BRIGHTWELL, an individual;<br><br>    Counterdefendant, | Hearing Date: September 18, 2017<br>Courtroom: 3C<br>Judge: Thomas J. Whelan<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: June 30, 2016 |

Counterclaimant The McMillan Law Firm, APC ("TMLF") opposes Counterdefendant L. Lee Brightwell's ("Ms. Brightwell") Motion to Dismiss the First Amended Counterclaim as follows [ECF 53]:

1
2

# TABLE OF CONTENTS

3
4

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

III.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7

8

IV.   STANDARDS IN DETERMINING A RULE 12(B)(6) MOTION. . . . . . . . 4

9

V.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10

    A.   The Counterclaim's factual allegations support a violation of
         Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Seventh Cause of

11

         Action). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12

        1.   Section 1030 Does Not Require "Usage, Alteration, or
             Destruction" to Find Liability as "Access" suffices, and both

13

             access and data obtained are alleged.. . . . . . . . . . . . . . . . . . . 7

14

        2.   California Rules of Professional Conduct Rule 3-700 Does Not

15

             Apply, as There was a Protective Order in Effect.. . . . . . . . . . 8

16

        3.   Clarification on TMLF's Statement of Dates Regarding Ms.
             Brightwell's Counsel's Communications with TMLF.. . . . . . 10

17

    B.   The Counterclaim's factual allegations support a violation of  Cal.

18

         Pen. Code § 502 (Eighth Cause of Action). . . . . . . . . . . . . . . . . . . 11

19

        2.   TMLF Alleges Facts Supporting Claims for "Victim Damages"

20

             Resulting From Ms. Brightwell's Unauthorized Access.. . . . 15

        3.   Ms. Brightwell violated Section 502 as a Client of TMLF, Not

21

             an Employee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22

    C.   The Counterclaim's factual allegations support a violation of  Cal.

23

         Bus. Prf. Code § 17200 (Ninth Cause of Action).. . . . . . . . . . . . . . 17

        1.   Specific Instances of Ms. Brightwell's Unlawful Business

24

             Practices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25

            i.    "Dine and Dash" on Attorney Representation. . . . . . . 22

26

            ii.   Taking Data That is Not Hers to Take. . . . . . . . . . . . . 24

27

VI.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28

1

# TABLE OF AUTHORITIES

2

**Federal Decisional Authority**

3

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5

*Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978). . . . . . . . 6

6

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544. . . . . . . . . . . . . . . . . . . . . . . . . 4

7

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995. . . . . . . . . . . . . . . . . . . . . . 5

8

*Chavez v. Immigration Naturalization Service*, 17 F.Supp.2d 1141 , 1143 (S.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

*Facebook, Inc. v. ConnectU* LLC, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

*Facebook, Inc. v. Power Ventures, Inc.,* U.S. Dist. LEXIS 93517 (2010). . . . . . 13

11

*Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). . . . . . . . . . . . . . . . . . 5

12

*Luce v. Dalton*, 166 F.R.D. 457 (S.D. Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 5

13

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) . . . . . . . . . . . . . 17

14

*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025 (9th Cir. 2008) . . . . 4

15

*Merritt v. Countrywide Financial Corp.*, 759 F.3d 1023 (9th Cir. 2014) . . . . . . . . 5

16

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). . . . . . . . . . . . . . 6

17

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19

*Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20

*Reno v. ACLU*, 521 U.S. 844 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21

*Reno v. ACLU*, 521 U.S. 844, 849, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997). . . 6

22

*Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962 (D. Ariz. 2008) . . . . . . . . 14, 15

23

*SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24

*United States v. Holder,* 302 F. Supp. 296, 298 (D. Mont. 1969), aff'd and adopted, 427 F.2d 715 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

*United States v. Holder*, 302 F.Supp. 296 (1969). . . . . . . . . . . . . . . . . . . . . . . . . 6

26

*United States v. Sutcliffe,* 505 F.3d 944 (9th Cir. 2007)

27

28

COUNTERCLAIMANT'S OPPOSITION TO
COUNTERDEFENDANT'S MOTION TO DISMISS

1   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2   *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099 (C.D.Cal.
3   2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4   *Zucco Partners v. Digimarc Corp.,* 552 F.3d 981 (9th Cir. 2009). . . . . . . . . . . . . 5

5   **Federal Statutory Authority**

6   18 U.S.C.S. § 1030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

7   18 U.S.C.S. § 1030(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8   18 U.S.C.S. § 1030(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9   18 U.S.C.S. § 1030(e)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10  18 U.S.C.S. § 1030(e)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  **Federal Rules of Civil Procedure**

12  Federal Rules of Civil Procedure Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . *Passim*

13  Federal Rules of Civil Procedure Rule 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . 1

14  Federal Rules of Civil Procedure Rule 15(a). . . . . . . . . . . . . . . . . . . . . . . . . . 5

15

16  **California Decisional Authority**

17  *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94 (1972). . . . . . . . . . . . . . . 18

18  *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal.App.3d 699, 262 Cal.
19  Rptr. 899 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20  *Burks v. Poppy Construction Co.*, 57 Cal.2d 463 (1962). . . . . . . . . . . . . . . . . 18

21  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*20 Cal.4th
    163 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22  *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29 (2007). . . . . . . . . . . . . 16

23  *Coast Plaza Doctors Hospital v. UHP Healthcare,* 105 Cal.App.4th 693 (2002)
24  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25  *Farmers Insurance Exchange et al. v. Superior Court of Los Angeles County,* 2
    Cal.4th 377  (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

26  *Payne v. United California Bank*, 23 Cal.App. 3d 850 (1972).. . . . . . . . . . . 18, 22

27  *People ex rel. City of Santa Monica v. Isaac Gabriel,*186 Cal.App.4th 882 (2010)
28  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

    *People ex rel. Mosk v. National Research Co. of Cal.*, 201 Cal.App.2d 765 (1962)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. McKale*, 25 Cal. 3d 626 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632 (1996).. . . . . . . . . . . . . 23

*Saunders v. Superior Court,* 27 Cal.App.4th 832 (1994). . . . . . . . . . . . . . . . . . . . 21

**California Statutory Authority**

Cal. Bus. & Prof. Code § 17203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

California Business & Professions Code § 17200. . . . . . . . . . . . . . . . . 2, 18, 19, 21

California Civil Code § 51 (Unruh Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Penal Code § 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Penal Code § 502(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Penal Code § 502(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Penal Code § 502(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

California Rules of Professional Conduct Rule 3-700(D). . . . . . . . . . . . . . . . . 8, 9

# I.    INTRODUCTION

Although Plaintiff and Counterdefendant Lee Brightwell ("Ms. Brightwell") terms this case as a "malpractice action and fee dispute", there are "two sides to every story," and Ms. Brightwell provides just one side of that dispute within her operative complaint. [Amended Complaint, ECF 16.]   Brightwell's unauthorized access to the private files and computer systems owned by Counterclaimant The McMillan Law Firm APC ("TMLF") give rise to independent claims against her. A whisper of the other side of that dispute is set forth in Ms. Brightwell's operative complaint:

> 17. During this time, Defendants provided Ms. Brightwell with access to their entire computer network, telling her it would be more efficient if she had access to their system and files so she could work on the O'Donnell Action. Defendants lacked the competence to limit Ms. Brightwell's access to only the files for the O'Donnell Action. Consequently, Defendants gave her access to their entire system such that she could access the files for all of Defendants' cases and clients. Defendants did not require Ms. Brightwell to sign a confidentiality agreement before giving her access to their network.

[Amended Complaint ECF 16 ¶ 17.]

Although on May 5, 2017, this Court entered an order striking the above paragraph 17 pursuant to Fed. R. Civ. Proc. 12(f), the stricken allegation adds plausibility to Counterclaimant's allegations of Brightwell's intrusion into TMLF's private data.  Although, Ms. Brightwell had been initially provided limited access to a subset of *her* files, but later, in January of 2015, TMLF denied Ms. Brightwell access to those files and TMLF's network. After she was been denied access, Ms. Brightwell somehow, in a manner unclear, invaded TMLF's system and accessed and obtained files—including files that she had no right accessing.  It later became clear, when her current lawyer stated to TMLF he had TMLF's entire Brightwell file, that Ms. Brightwell had obtained the files to which she had been denied access, as they were produced under an Attorneys-Eyes Only protective order entered by the California Superior Court.  As this court recognized in its prior Order striking the allegation, the conduct is serious.  TMLF

1  is entitled to an accounting and restitution of the data Brightwell improperly

2  obtained, and damages.

3       Counterdefendant Brightwell engaged with the attorneys arising from a

4  commercial dispute, i.e., ownership of a business, and the allegations in the

5  counterclaims describe commercial disputes arising from the retention of lawyers

6  satisfying the requirements for a claim under California Bus. & Prof. Code section

7  17200.

## II.    PROCEDURAL HISTORY

9       Ms. Brightwell sued Defendant and Counterclaimant The McMillan Law

10  Firm, APC ("TMLF"), for Breach of Contract, Fraud, Professional Negligence,

11  Breach of Fiduciary Duty, and Declaratory Relief arising out of Counterclaimant's

12  representation of Ms. Brightwell in a San Diego Superior Court action. [Amended

13  Complaint ECF 16.]  The Defendants, including responding party TMLF, filed an

14  Answer [ECF 35], and Counterclaims. [ECF 36.] TMLF's Counterclaims were

15  later amended [ECF 51], and TMLF filed a Motion to Amend the First Amended

16  Counterclaims ("FACC") once more on August 28, 2017. [ECF 58.] The FACC

17  contains counterclaims including, among others, violation of the Computer Fraud

18  and Abuse Act, 18 U.S.C.S. § 1030 (Seventh Cause of Action), violation of the

19  California Comprehensive Computer Data Access and Fraud Act, California Penal

20  Code § 502 (Eighth Cause of Action), and Unfair Competition in violation of

21  California Business and Professions Code section 17200 (Ninth Cause of Action).

22  [FACC, ECF 51.] Ms. Brightwell's instant Motion seeks to dismiss those three

23  Counterclaims. [ECF 53.]

24       On August 28, 2017 TMLF moved by notice motion to amend the operative

25  counterclaims by filing a proposed Second Amended Counterclaim pleading to

26  reflect the right to recover its fees under the Unjust Enrichment doctrine. [ECF

27  58].  TMLF requests that a different Second Amended Counterclaim be filed

28  herein which addresses ambiguities and typographical error identified by

Counterdefendant Brightwell in her present motion, and additionally incorporates the amendments and supplemental request for relief identified in the motion to amend.

## III.   STATEMENT OF FACTS

TMLF's counterclaims arise from the parties' interactions following TMLF's agreement to provide legal services to Ms. Brightwell in an action against R.F. Logistics LLC and Brian O'Donnell, and to defend Ms. Brightwell in a crosscomplaint brought by those persons. [FACC, ECF 51 ¶ 6.] Ms. Brightwell, unbeknownst to TMLF at the time, had a history of retaining firms to represent her in the action with R.F. Logistics LLC, incurring up tens, if not hundreds of thousands of dollars in legal fees, all the while mentally capping what she was willing to pay those firms at an amount far below the charges incurred. [FACC, ECF 51 ¶ 17, 22, 25.] TMLF was the third—that TMLF knows of—law firm in a daisychain of law firms Ms. Brightwell engaged to represent her against her business and personal associate, Brian O'Donnell, and his company, R.F. Logistics LLC. [*Id.*]

Unaware that Ms. Brightwell had set an unstated arbitrary "cap" on the fees that she'd actually pay, TMLF agreed to take on Ms. Brightwell's case. [FACC, ECF 51 ¶ 24-26.] TMLF coupled its engagement with the requirement that Ms. Brightwell remain significantly involved, as the case was very near to trial and barely any preparation had been done by prior counsel. [FACC, ECF 51 ¶ 23-26.] Ms. Brightwell failed to invest the promised time and energy into her case. Through the efforts of TMLF's attorneys, then-Defendants O'Donnell and R.F. Logistics LLC offered to settle the case for $435,000—a substantially greater offer than either of the two previous law firms managed to induce—which Ms. Brightwell rejected. [FACC, ECF 51 ¶ 35, 39.]

Ms. Brightwell refused to pay TMLF according to its fee agreement, refused to cooperate, and refused to communicate, provoking the motion to withdraw by

1 | TMLF. [FACC, ECF 51 ¶ 28, 29, 33, 36.] While still being represented by TMLF,

2 | on the very day of the hearing on the motion to withdraw, prior to the court

3 | hearing, Ms. Brightwell contacted the mediator and notified him that she'd accept

4 | the previously offered $435,000. [FACC, ECF 51 ¶ 39.] On August 4, 2015 Prior

5 | to the effective date of withdrawal, Ms. Brightwell engaged her present attorney,

6 | Joshua Heinlein. [ECF 16, ¶28, p. 9.] On August 5, 2015, once Ms. Brightwell had

7 | a lawyer in place, Scott McMillan filed the proof of service reflecting the

8 | withdrawal from representation. At that point, Ms. Brighwell made her settlement

9 | with her then-defendants for the amount previously rejected of $435,000, and a

10 | release of their claims expressed in the cross-complaint. [FACC, ECF 51 ¶ 38-39.]

11 |     On or about August 6, 2015, the operative counterclaim erroneously states

12 | August 2013, Mr. Heinlein disclosed that Ms. Brightwell had control of the

13 | entirety of the Brightwell "subdirectory". [FACC, ECF 51 ¶ 85.]

14 | **IV.    STANDARDS IN DETERMINING A RULE 12(B)(6) MOTION**

15 |     A motion to dismiss should not be granted unless a plaintiff fails to plead

16 | "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

17 | *v. Twombly* (2007) 550 U.S. 544, 570. "The plausibility standard is not akin to a

18 | 'probability requirement,' but it asks for more than a sheer possibility that a

19 | defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 quoting

20 | *Twombly*, 550 U.S. at 556 (2009) . Allegations of material fact are taken as true

21 | and construed in the light most favorable to the non-moving party. *Manzarek v. St.*

22 | *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Ninth

23 | Circuit has stated that Rule 8(a)'s simplified pleading standard applies to all civil

24 | actions, with limited exceptions not here relevant. *Merritt v. Countrywide*

25 | *Financial Corp.*,759 F.3d 1023, 1032 (9th Cir. 2014) .

26 |     Finally, granting a motion to dismiss without leave to amend, "is improper

27 | unless it is clear that the complaint could not be saved by any amendment." *Zucco*

28 | *Partners v. Digimarc Corp.* (9th Cir. 2009) 552 F.3d 981, 989.   Counterclaimant

1    submits a proposed amendment to the subject counterclaims herein.

2         Federal Rule of Civil Procedure 15(a) provides that after a responsive

3    pleading has been served, a party may amend its complaint only with leave of

4    court, and leave "shall be freely given when justice so requires." Fed. R. Civ. P.

5    15(a). Five factors are taken into account to assess the propriety of a motion for

6    leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party,

7    (4) futility of amendment, and (5) whether the plaintiff has previously amended

8    the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

9         In assessing whether a proposed amendment should be permitted, the court's

10   limited role is identical to its role in assessing a 12(b)(6) motion to dismiss for

11   failure to state a claim, namely to assess the legal feasibility of the complaint, not

12   to weigh evidence or resolve the disputed facts of the case. See e.g., *Luce v.*

13   *Dalton*, 166 F.R.D. 457 (S.D. Cal. 1996). It follows that, when determining the

14   legal feasibility of a proposed amendment, "[t]he Court must accept as true the

15   complaint's material allegations and any reasonable inferences that may be drawn

16   from them." *Chavez v. Immigration Naturalization Service*, 17 F.Supp.2d 1141 ,

17   1143 (S.D. Cal. 1998), citing *Parks School of Business, Inc. v. Symington*, 51 F.3d

18   1480, 1484 (9th Cir. 1995) ("We take all allegations of material fact as true and

19   construe them in the light most favorable to the nonmoving party.").

20        "Futility of amendment can, by itself, justify the denial of a motion for leave

21   to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility is a

22   measure of the amendment's legal sufficiency. "[A] proposed amendment is futile

23   only if no set of facts can be proved under the amendment . . . that would

24   constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc*.,

25   845 F.2d 209, 214 (9th Cir. 1988). Thus, the test of futility is identical to the one

26   applied when considering challenges under Rule 12(b)(6) for failure to state a

27   claim upon which relief may be granted. *Baker v. Pac. Far E. Lines, Inc.*, 451 F.

28   Supp. 84, 89 (N.D. Cal. 1978).

Counterclaimant requests that the court take judicial notice of the previously filed motion to amend, and the law set forth therein docketed at ECF 58. [RFJN 2.]

## V.    ARGUMENT

### A.    The Counterclaim's factual allegations support a violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Seventh Cause of Action)

The federal jurisdictional predicate for 18 U.S.C. section 1030 is plain, both by the allegations in Plaintiff's amended complaint where she describes the interstate transaction with TMLF and diversity citizenship, [ECF 16, ¶ ¶ 6, 9-11, 16], and the allegations in the operative counterclaim, which included reference to an "IP address." [ECF 51, ¶¶ 83, 88,]  TMLF's computers are used to engage in interstate commerce, as they use the internet as well as enable TMLF to provide services to clients outside of California.

> "The Internet is an international network of interconnected computers," *Reno v. ACLU*, 521 U.S. 844, 849, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997), similar to--and often using--our national network of telephone lines, see *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005). We have previously agreed that "[i]t can not be questioned that the nation's vast network of telephone lines constitutes interstate commerce," *United States v. Holder*, 302 F. Supp. 296, 298 (D. Mont. 1969), aff'd and adopted, 427 F.2d 715 (9th Cir. 1970) (per curiam), and, a fortiori, it seems clear that use of the internet is intimately related to interstate commerce.

*United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007) (emphasis added.)

Ms. Brightwell states that TMLF "admits that it gave Brightwell permission to access its computer system, so [TMLF] has no claim under these sections." [Brightwell Motion pg. 4.] Not so.  That is incomplete. Initially, Ms. Brightwell had permission to work in her subdirectory, under the supervision of TMLF intern, Benjamin Schil. [FACC, ECF 51 ¶ 82.] That permission was revoked in January of 2015 when, in TMLF's efforts to block her access to the firm's active network, Ms. Brightwell was sequestered in the firm's law library, with a firewalled IP address. Despite those efforts, she was able to access TMLF's private data [FACC,

ECF 51 ¶ 83.]

1.    **Section 1030 Does Not Require "Usage, Alteration, or Destruction" to Find Liability as "Access" suffices, and both access and data obtained are alleged.**

Ms. Brightwell misconstrues 18 U.S.C.S. § 1030 by stating TMLF purportedly failed to evidence her "usage, alteration, or destruction" of TMLF's data. [Brightwell Motion pg. 6-7.] However, section 1030 makes it a crime to exceed authorized *access* of a computer connected to the internet, without requiring any culpable intent. Specifically, section 1030(a)(2)(C) states, as a combined sentence: whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer shall be punished as provided in 1030(c).

The term "exceeds authorized access" means to access a computer with authorization and to use such <u>access</u> to <u>obtain</u> or alter information in the computer that the accesser is not entitled so to <u>obtain</u> or alter. (18 U.S.C.S. § 1030(e)(6) (emphasis added.) The term "protected computer" means a computer which is used in or affecting interstate or foreign commerce or communication. (18 U.S.C.S. § 1030(e)(2)(B).)   TMLF alleges that its computers were "protected computers."

As the statute plainly reads, neither "usage, alteration, or destruction" of data is required to find liability. Indeed, TMLF has alleged that Ms. Brightwell exceeded her authorized <u>access to obtain</u> copies of files and then distribute them. [FACC, ECF 51 ¶ 82-85.] The act of obtaining specific data is at paragraph 85. [FACC, ECF 51 ¶ 85.]

Thus, TMLF pleaded sufficient facts to allege Ms. Brightwell exceeded her authorized access of TMLF's protected computers: (1) she was initially granted limited access to the TMLF servers, which was to be supervised by TMLF staff, (2) her access was revoked, (3) she clearly later accessed TMLF's servers after said revocation of access, as she obtained a copy of her *complete* subdirectory

from TMLF, which she gave to her lawyer, Mr. Heinlein. [FACC, ECF 51 ¶ 82-85.]

### 2. California Rules of Professional Conduct Rule 3-700 Does Not Apply, as There was a Protective Order in Effect.

Ms. Brightwell claims:

> Second, the allegation itself discloses that the alleged "subdirectory" was for Brightwell's case: "the entirety of the subdirectory[1] associated with Lee Brightwell." As such, this is not Counterclaimant's "private data," rather, these are the files related to Ms. Brightwell's case which she has a right to possess. Rules of Professional Conduct of the State Bar of California, Rule 3-700(D). Therefore, the Court should dismiss Counterclaimant's seventh counterclaim with prejudice.
>
> Footnote [1]: This allegation is also incomprehensibly vague as nowhere does Counterclaimant state what it means by the term "subdirectory."

[Memo., pg. 5.]

First, addressing Ms. Brightwell's footnote, in computing, a 'directory' is a file system cataloging structure which contains references to other computer files; a directory contained inside another directory (i.e. a hierarchal file system) is called a 'subdirectory.'[1] Put simply, TMLF's computer filing system has a main folder for all its client files (the directory), with each client having their own folder contained therein (each a subdirectory).

Second, Ms. Brightwell ignores the plain language of paragraphs 82-85 in the FACC:

> "82. While participating in the preparation for trial in her case, Counterdefendant Lee Brightwell was specifically instructed to only access files within her own directory, and under the supervision of the staff of Counterclaimant.
>
> 83. On our about January of 2015, Counterdefendant Lee Brightwell was sequestered from the Counterclaimant's active network, and given

---

[1] Wikipedia, *Directory (computing)*, https://en.wikipedia.org/wiki/Directory_(computing) (Last accessed August 31, 2017.)

a desk inside the Firm's library, with a firewalled IP address. Despite those efforts to exclude Counterdefendant from accessing the Firm's internal network, Counterclaimant is informed and believes based upon Counterdefendant's suggestions in this case, that she was able to access the Firm's private data.

84. Counterclaimant did not consent to Counterdefendant's access to its private systems and data, or such matters relating to Counterdefendant that were provided to Counterclaimant according to protective order.

85. On or about August 2013, Joshua Heinlein, counsel and authorized agent for Counterdefendant disclosed that he had the entirety of the subdirectory associated with Lee Brightwell. Such subdirectory had not been made available to Counterdefendant, and the obtaining of that subdirectory was without Counterclaimant's knowledge or authorization."

[FACC, ECF 51 ¶ 82-85.]

Ms. Brightwell, without authorization, accessed TMLF's computers in violation of 18 U.S.C.S. 1030 to obtain a copy of her directory, evidenced by her lawyer's statements above.  Although Ms. Brightwell claims she had a right to said documents pursuant to California Rules of Professional Conduct Rule 3-700(D), the text of that rule does not support her claim. [MTD, ECF 53, p. 6.]  Rule 3-700 states, in pertinent parts:

Rule 3-700 Termination of Employment

* * *

(D) Papers, Property, and Fees. A member whose employment has terminated shall:

(1) **Subject to any protective order** or nondisclosure agreement, promptly release to the client, at the request of the client, all the client papers and property. "Client papers and property" includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not;

[Cal. Rules of Prof'l Conduct, Rule 3-700(D)] [emphasis added.]

As seen in the underlined sections above, Rule 3-700 does not apply because (1) a protective order was in place, and (2) Ms. Brightwell accessed TMLF's servers without authorization and took her entire subdirectory without permission, thus preventing TMLF from filtering those documents to which she

should not have access.  Contemporaneously with this opposition, Counterclaimant seeks judicial notice of the acknowledgment signed by Mr. Heinlein on August 6, 2015 of the Superior Court's protective order which he erroneously dated August 6, 2014. [Request for Judicial Notice, Item 3.]

Ms. Brightwell was aware that she had no right to access the material that had been provided to TMLF under protective order, whether or not that material was related to her case. [*see* Amended Complaint ECF 16 ¶ 21.] Ms. Brightwell was also aware she did not have authorization to take copies of her files from TMLF's servers, as her access to TMLF's servers was revoked. [FACC, ECF 51 ¶ 83.]

### 3. Clarification on TMLF's Statement of Dates Regarding Ms. Brightwell's Counsel's Communications with TMLF.

Ms. Brightwell's defense against TMLF's allegations of her violation of section 1030 relies heavily on the following date discrepancy in the FACC:

> On or about <u>August 2013</u>, Joshua Heinlein, counsel and authorized agent for Counterdefendant disclosed that he had the entirety of the subdirectory associated with Lee Brightwell. Such subdirectory had not been made available to Counterdefendant, and the obtaining of that subdirectory was without Counterclaimant's knowledge or authorization. (Dkt. 51, ¶ 85.) <u>As an initial matter, this allegation is factually impossible</u>.

[Memo., pg. 4] [emphasis added.]

However, just two paragraphs up on the same half-page, TMLF stated, "On our about <u>January of 2015</u>, Counterdefendant Lee Brightwell was sequestered from the Counterclaimant's active network, and given a desk inside the Firm's library, with a firewalled IP address." [FACC, ECF 51 ¶ 83, emphasis added.] As such, it is evident that the year of "2013", rather than "2015" was entered by inadvertence. Indeed, based on the timeline of events described in that section of the FACC, it is clear that TMLF did not mean its contact with Ms. Brightwell's counsel, Mr. Heinlein—hired after TMLF—regarding Ms. Brightwell's

unauthorized access to TMLF's files occurred *before* Ms. Brightwell even engaged TMLF to represent her in the action against Mr. O'Donnell and R.F. Logistics LLC. [*See* FACC, ECF 51 ¶ 23.]  However it should be plain, and readily deducible from the chronology set forth in the balance of the counterclaims that the reference to 2013 is a typographical error as TMLF was not contacted by Brightwell, Brightwell did not even have access at the earliest in 2014. Mr. Heinlein's involvement began in August 2015.  The version of the proposed Second Amended Counterclaim pleading submitted in opposition corrects this typographical error.

### B.    The Counterclaim's factual allegations support a violation of Cal. Pen. Code § 502 (Eighth Cause of Action)

California Penal Code Section 502(c)(2) holds liable any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). "Penal Code section 502 prohibits knowing access, followed by unauthorized (i.e., "without permission") taking, copying, or use of data." *Facebook, Inc. v. ConnectU* LLC, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007).  Contrary to the suggestion at Counterdefendant's Memo, p. 6, there was no need to plead "use" under section 502, as simply accessing and making a copy under the plain language of 502(c)(2) results in liability.

### 1.    TMLF Alleges sufficient facts that Ms. Brightwell Accessed TMLF's Servers without authorization such that liability can be found under Section 502.

TMLF alleges in its FACC that Ms. Brightwell accessed TMLF's computers without authorization and made copies of her file subdirectory—at least that TMLF is aware of—and provided said data to her counsel, Mr. Heinlein, for use in

her prosecution against TMLF. [FACC, ECF 51 ¶ 82-85.] TMLF further alleges that, in so accessing TMLF's computers without authorization, Ms. Brightwell is liable under Section 502(c). [FACC, ECF 51 ¶ 98-105.] Indeed, Ms. Brightwell even quotes the sections from the FACC, albeit blatantly ignoring the operative language there within:

> 99. Counterclaimant is informed and believes, based on the statements by Counterdefendant and her counsel, that Counterdefendant Brightwell violated section 502(a) of the California Penal Code by committing one or more of the specific offenses set forth at subdivision (c) of section 502, when she:

> (1) <u>Knowingly accesse[d] and without permission</u> alters, damages, delete[ed], destroy[ed], or <u>otherwise use[d] any data, computer, computer system, or computer network</u> in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, <u>or</u> (B) <u>wrongfully control or obtain</u> money, property, <u>or data.</u>

> (2) <u>Knowingly accesse[ed] and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.</u>

> (3) <u>Knowingly and without permission use[d] or cause[d] to be used computer services.</u>

> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

> ***

> (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

> (7) <u>Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.</u>

> (8) Knowingly introduces any computer contaminant [as defined in section 502(b)(12)] into any computer, computer system, or computer network.

[FACC, ECF 51 ¶ 99.]

As seen above, section 502 focuses especially on unauthorized access, rather than merely evidence of *damage* done by said access. The counterclaims as

1  presently filed allege that Brightwell had obtained the data within the

2  subdirectory. [FACC, ECF 51 ¶¶ 85, 89, 91.]   Brightwell is solely in control of the

3  information reflecting *all* the data that she copied from the TMLF servers and

4  computers.

5       *Facebook, Inc. v. Power Ventures, Inc.,* 2010 U.S. Dist. LEXIS 93517 (No.

6  Dist. Cal, 2010), addressed a situation wherein a Facebook user, who was granted

7  access to the use of Facebook by way of creating an account, then granted

8  permission to a third party to access Facebook's software in a manner prohibited

9  by the Terms of Use agreement between Facebook and the user, i.e. data scraping.

10 *Id.*, at 10. On cross-motions for summary judgment, the court denied the data

11 scraper's motion for summary judgment finding that the data-scraper, Power, ". . .

12 circumvented Facebook's technical barriers, Power may be held liable for violation

13 of Section 502." *Id.*, at 36.  Here, Brightwell circumvented TMLF's technical

14 barriers of placing her in the Firm's library with a firewalled IP address. She

15 somehow got around that technical barrier.

16      In *Weingand*, a terminated employee received permission to access

17 plaintiff's computer system based on his representation that he sought to get his

18 "personal files" after termination, but had not authority with respect to the

19 additional files he accessed.  The *Weingand* court explained that the court in

20 *Facebook [v. Power Ventures]* "set a threshold under § 502 that defines

21 unauthorized access as "that [which] circumvents technical or code-based barriers

22 that a computer network or website administrator erects to restrict the user's

23 privileges within the system, or to bar the user from the system altogether."

24 *Weingand v. Harland Fin. Solutions, Inc.*, 2012 U.S.Dist.LEXIS 84844, at *15

25 (N.D.Cal. June 19, 2012, No. C-11-3109 EMC)

26      Here, Plaintiff alleged sufficient facts that (1) Ms. Brightwell was initially

27 granted access to TMLF's server, (2) that access was later revoked, (3) TMLF

28 attempted to limit her access with a firewalled IP address in the Firm's library

wherein Ms. Brightwell was only allowed to use her own computer and the firm's wifi internet–similar to the security precautions identified in *Weingand* regarding *Facebook, supra*, (4) Ms. Brightwell was only ever granted supervised *access* to the files at issue, not permission to copy or distribute them, let alone without requesting such copies or informing TMLF when she made them, and (5) some of the files she likely accessed were subject to a protective order, in which Ms. Brightwell had no proprietary interest. [FACC, ECF 51 ¶ 82-96.] TMLF alleges even broader access to its "private data" as Brightwell admitted to access to the other clients files as well.

In addition, Plaintiff alleged that Ms. Brightwell's counsel admitted to having possession of a copy of the files from TMLF's servers, which could have only been obtained by Ms. Brightwell's knowing actions of copying the files without permission and then distributing them to Mr. Heinlein. [FACC, ECF 51 ¶ 85.] Ms. Brightwell does not deny having said copies in her Motion. [Memo., pg. 5.] It remains for discovery to determine what else she has copied.

Thus, the FACC creates at least a reasonable inference, i.e., a plausible claim, that Ms. Brightwell's temporary authorization extended only to accessing her files on the TMLF servers and files pursuant to TMLF's supervision, and that authorization ended when TMLF revoked Ms. Brightwell's permissions to access TMLF's servers, but she proceeded past technical barriers despite revocation of access. (See, e.g. *Weingand, supra* at 6; *see also Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 967-68 (D. Ariz. 2008) [holding that "a violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted"].) Her admitted possession of the entirety of the data, including that under protective order, some seven months later demonstrates the plausibility of counterclaimants allegations.

Counter claimant specifically alleges damages at paragraph 93, stating ". . . Counterclaimant has suffered "loss" aggregating at least $5,000 in value within the

1    meaning of 18 U.S.C. § 1030(c)(4)(i)(I)."  [FACC, ECF 51 ¶ 93.]

2               **2.      TMLF Alleges Facts Supporting Claims for "Victim**

3                        **Damages" Resulting From Ms. Brightwell's Unauthorized**

4                        **Access.**

5          Ms. Brightwell claims that TMLF failed to allege facts supporting its

6    "victim damages" as defined in section 502(b)(11).

7              There are no facts alleging how Brightwell allegedly used such
       information or otherwise altered, damaged, or destroyed such
8      information despite Counterclaimant purportedly incurring more than
       $5,000 to investigate Brightwell's computer access and use (Dkt. 51 ¶
9      93.) If such an investigation turned up evidence of Brightwell's usage,
       alteration or destruction, Counterclaimant would have alleged as much.
10     That it failed to do so shows that Counterclaimant cannot in good faith
       allege that Brightwell altered, damaged, or destroyed Counterclaimant's
11     data.

12   [Memo., pg. 6-7.]

13         As discussed above, "usage, alteration, or destruction" of data is not

14   required to violate either section 1030 or section 502, but rather unauthorized

15   access to obtain data will suffice, as which is properly alleged. [FACC, ECF 51 ¶

16   82-86.] As explained in *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d

17   975 (N.D. Cal. 2008) where the offender has actually accessed protected

18   information, discovering who has that information and what information he or she

19   has is essential to remedying the harm. In such cases courts have considered the

20   cost of discovering the identity of the offender or the method by which the

21   offender accessed the protected information to be part of the loss for purposes of

22   the CFAA. *See, e.g.*, *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 2008 U.S.

23   Dist. LEXIS 15329, *2-3 (D. Ariz.) (finding that the cost the plaintiff incurred in

24   conducting a forensic analysis of the defendant's computer was a loss where the

25   defendant emailed the plaintiff's confidential information to himself before

26   resigning from his position with the plaintiff). *Successfactors*, *Id.*, at  981.

27         That TMLF does not state the results of its damage assessment conducted

28   upon learning that Ms. Brightwell accessed TMLF's servers without authorization

and made copies of data unknown is immaterial.  It is not an element.

> "Victim expenditure" means any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.

[Cal. Penal Code § 502(b)(11).]

Taking precautionary measures to ensure TMLF's data was not in any way altered, corrupted, deleted, or otherwise affected by Ms. Brightwell's unauthorized access was reasonable, given the contentious nature of Ms. Brightwell and TMLF's relationship termination. In that regard, TMLF alleged sufficient facts for this cause of action, as TMLF pleaded that Ms. Brightwell was granted limited access, that access was revoked, she thereafter accessed TMLF's servers, and thus TMLF incurred expenses to assess damage caused during her unauthorized access. [FACC ECF 51 ¶ 82-86, 100-101.] That damage continues.

### 3.   Ms. Brightwell violated Section 502 as a Client of TMLF, Not an Employee entitled to a defense under 502(h).

Citing *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29 (2007), Ms. Brightwell claims in her Motion that she was a "quasi-employee"— whatever that term may mean—of TMLF, and therefore she should be shielded from liability under Section 502(h) [Memo., pg. 7.] While section 502 provides some measure of protection to employees acting within the scope of their employment–and in some cases outside of it–Ms. Brightwell was *a client* of TMLF, not an employee, contractor, or any other type of employment status that may exist under the law. [FACC, ECF 51 ¶ 26.] *Chrisman*, and 502(h) are inapplicable. Indeed, Ms. Brightwell signed engagement agreement describing her attorney-client relationship with TMLF. [Amended Complaint ECF 16, ¶ 8; ECF 16-1 Exh. A.] In light of her judicial admissions reflecting the nature of the relationship between the parties, crossdefendant's effort recast herself as a "quasi-employee"must be rejected.

1    As Ms. Brightwell's trial against R.F. Logistics LLC was set to begin in just

2    two short months, and because no preparation was made by previous firms Ms.

3    Brightwell hired, TMLF requested that Ms. Brightwell, who was far more

4    intimately familiar with the facts and documents in her case, to provide TMLF

5    with a list of 100 documents she deemed as being the most important. [FACC,

6    ECF 51 ¶ 21.]

7    Despite such a typical task for a client with thousands of documents, Ms.

8    Brightwell decided to assist with the preparation for her trial, which she agreed to

9    do as part of TMLF taking on her case so close to trial [FACC, ECF 51, ¶ 24], she

10   chose to do nearly anything else but that. [FACC, ECF 51 ¶ 27-30.] Indeed, Ms.

11   Brightwell was a client of TMLF's, not an employee, nor a "quasi-employee."

12   Unsurprisingly, Ms. Brightwell provides no legal authority defining the term

13   "quasi-employee" or its applicability to this case.

14   Even if Ms. Brightwell were an employee of TMLF, which TMLF contests,

15   as explained in the case cited by Ms. Brightwell [Motion pg. 4], *LVRC Holding*

16   *LLC v. Brekka*, it is the employer's decision to allow or to terminate an employee's

17   authorization to access a computer that determines whether the employee is with

18   or "without authorization." *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1133

19   (9th Cir. 2009). Section 502(c)(5) applies to an employee who exceeds their

20   authorization. *People v. Childs*, 220 Cal.App.4th 1079, 1104 (2013) [Subdivision

21   (c)(5) may properly be applied to an employee who uses his or her authorized

22   access to a computer system to disrupt or deny computer services to another lawful

23   user].) Thus, the fact that TMLF revoked Ms. Brightwell's authorization to access

24   its servers and computers, and the manner in which she did so access them,

25   warrants liability under section 502, whether or not she was an employee.

26   **C.    The Counterclaim's factual allegations support a violation of**

27   **Cal. Bus. Prf. Code § 17200 (Ninth Cause of Action)**

28   Counterclaimant specifically alleges at paragraph 107:

1
2
3
4
5

"Counterdefendant Lee Brightwell is engaged independently in business and investment efforts, and engaged Counterclaimant to provide legal services in part, to further such business and investment efforts. Counterdefendant L. Lee Brightwell operates Brightwell Associates, LLC, and other various entities, is actively engaged as a real estate investor, and claimed to be the co-owner of R.F. Logistics, LLC. Counterdefendant engaged the Counterclaimant to provide legal services to resolve a business dispute with her co-venturer Brian O'Donnell."

6   [FACC, ECF 51, ¶ 107]

7         Ms. Brightwell claims that "none of the conduct [TMLF] alleges Brightwell

8   performed can properly be called a business practice," as is required for a claim

9   under [California Business and Professions Code] Section 17200." [Brightwell

10  Motion pg. 8.]  Ms. Brightwell also claims "There are no allegations that

11  Brightwell makes a business out of suing people." [Memo., pg. 9.]  But, that is not

12  the test under section 17200.  Finally, Ms. Brightwell states that "Simply hiring a

13  law firm to sue someone, even if such a suit can be characterized as a "business

14  dispute," as [TMLF] now alleges, is itself not a business practice." [Memo., pg. 9.]

15  Not only is this not the allegation, it is not the test. Ms. Brightwell is indeed

16  involved in "business" within the meaning of section 17200.  Her conduct took

17  place within her business capacity whether or not she is in the "business" of suing

18  others.  Bringing lawsuits, defending lawsuit, and hiring vendors, just as having

19  employees and customers – are all normal facets of operating a business.

20        An "unlawful business act or practice" under section 17200 must relate to

21  conduct of business or be committed pursuant to business activity. *See Farmers*

22  *Insurance Exchange et al. v. Superior Court of Los Angeles County*, 2 Cal.4th 377,

23  383 (1992); *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 113 (1972).

24        Whether a particular act is business-related is a question of fact dependent

25  on the circumstances of each case. *People ex rel. City of Santa Monica v. Isaac*

26  *Gabriel* (2010) 186 Cal.App.4th 882, 888 (2010); *Watson Labs., Inc. v.*

27  *Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1117  (C.D.Cal. 2001), citing

28  *Payne v. United California Bank*, 23 Cal.App. 3d 850, 856 (1972). No court has

1  specifically defined the term "business" as used in section 17200, but courts have

2  defined "business" broadly in other statutes. *See, e.g., Burks v. Poppy*

3  *Construction Co.* 57 Cal.2d 463, 468 (1962) [defining "business" under the Unruh

4  Act to include "everything about which one can be employed," "often synonymous

5  with 'calling, occupation, or trade, engaged in for the purpose of making a

6  livelihood or gain.'"].

7        In *People ex rel. City of Santa Monica v. Gabriel*, the Court of Appeals

8  affirmed the judgment of the trial court against a landlord under the UCL, finding

9  that sexual harassment of a tenant was a "business practice" within the meaning of

10  section 17200, and so was subject to suit under the UCL because it was made

11  possible by a commercial relationship which had an integral connection to

12  commercial activity. *People ex rel. City of Santa Monica v. Gabriel,* 186

13  Cal.App.4th 882, 883 (2010).  The landlord in *Gabriel* was not in the business of

14  sexually harassing his tenants, but, in the business of providing housing. But, a

15  nexus between the commercial activity and the unlawful conduct was present to

16  impose liability under the UCL. Here, the underlying litigation for which Ms.

17  Brightwell engaged TMLF to represent her was connected to commercial activity,

18  and the present dispute between TMLF and Ms. Brightwell was intertwined with,

19  and made possible by an underlying commercial relationship.

20        For instance, the subject matter of the underlying lawsuit against Mr.

21  O'Donell and R.F. Logistics LLC arose from Ms. Brightwell's conduct in a

22  "business." Indeed, Ms. Brightwell's initial complaint in that suit alleged as much:

23        13. Ms. Brightwell is informed and believes and based thereon alleges
24        that O'Donnell is someone who cannot separate his work life from his
         personal life. He fell in love with Ms. Brightwell and wanted them to be
25        together. In addition, on information and belief, O'Donnell knew that
         Ms. Brightwell's industrial engineering background and experience in
26        process analysis would be a significant benefit to the services RFL could
         provide. Accordingly, in many lengthy telephone conversations
27        throughout 2006, O'Donnell asked Ms. Brightwell to move from Hawaii
         and join him as a "partner" at RFL to "grow this business together" in
28        San Diego.

14. From February 2006 to June 2007, O'Donnell and Ms. Brightwell had a series of discussions regarding the conditions under which Ms. Brightwell would be willing to join O'Donnell in San Diego to work at RFL. As an important part of those discussions, and in an effort to entice Ms. Brightwell to move to San Diego, O'Donnell promised Ms. Brightwell an equal ownership interest in RFL if she would join the company. By doing this, Mr. O'Donnell offered the woman he loved ownership in the company he founded with the potential for them to "grow the business together." Mr. O'Donnell told Ms. Brightwell that together, with her participation, they could double· the revenues with two people chargeable on the government contract, incur negligible expenses by living together and working from home, thereby "banking" half of the revenues and growing a nest egg. At this time, O'Donnell was opposed to hiring and managing employees."

[FACC, ECF 51 Exh. A, p. 33-34 (R.F. Logistics Complaint, ¶ 13-14).]

Ms. Brightwell's initial complaint against Mr. O'Donnell and R.F. Logistics LLC, and her subsequent amendments to that complaint, did not vary in the above allegations. Indeed, the dispute for which Ms. Brightwell retained TMLF involved Ms. Brightwell's partnership in the business, and Ms. Brightwell specifically sought recovery based upon her business rights as against Mr. O'Donnell and R.F. Logistics LLC arising from a commercial transaction:

90. Between February 2006 and June 2007, in a series of discussions, O'Donnell, as agent for RFL, offered Ms. Brightwell the opportunity to join him as an equal owner to help build RFL.

91. During this time period, the parties entered into an oral agreement when Ms. Brightwell accepted that offer with the understanding that she was to have significant ownership interest in the company.

92. Ms. Brightwell invested significant time, effort, money and other resources into RFL over a five year time period with the understanding that she was an equal owner in the company.

[FACC, ECF 51 Exh. A, pg. 133 (R.F. Logistics Complaint ¶ 90-92).]

The plausibility of the counterclaims are further buttressed by Ms. Brightwell's resume, which she attached to her initial complaint, identified Ms. Brightwell as a real estate investor, and a "member", i.e., a business person, of R.F. Logistics LLC. [FACC, ECF 51 Exh. A, pg. 68 (R.F. Logistics Complaint, Exh. B pg. 2).] Further, in support of her claims against Mr. O'Donnell and R.F. Logistics LLC in the Superior Court, Ms. Brightwell submitted supporting

evidence of her claims in the form of letters to Mr. O'Donnell, wherein she stated that "[She] was more successful now than [she had] ever been in business." [FACC, ECF 51 Exh. A, pg. 88 (R.F. Logistics Complaint, Exh. F pg. 6).] Ms. Brightwell's position on these matters did not change from when she started the case, i.e. she was a commercial actor entitled to her "share" of the "business."

Here, the TMLF engagement letter with Ms. Brightwell reflected that she was engaged in a business, which was clearly the subject matter of the underlying Superior Court case:

Scenario #2 Long litigation project.

Specifically, [TMLF] will receive 20% of the proceeds from the sale of the business (exclusive of marketing expenses) and 20% of any damages recovered through the lawsuit. By this agreement, under that circumstance, You agree that at the resolution of the dispute, you will the business through a business broker, and sell the business in an arms-length transaction with You bearing all the broker fees, commissions, and listing expenses without discount to the Firm's fee, and as part of your 80% remainder.

[Exhibit A to Amended Complaint, ECF 16-1, pg. 5-6 (TMLF Engagement Letter pg. 4-5).]

Read together, Ms. Brightwell's conduct satisfies the definition set out in *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal.App.4th 882, 883 (2010) in that her conduct was made possible by a commercial relationship, and that said relationship had an integral connection with commercial activity.

Unlawful practices prohibited by section 17200 include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court,* 27 Cal.App.4th 832, 838 (1994). Indeed, section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq. *Id.* at 839. Relief under section 17200 entitles the plaintiff to an injunction and restitution. *See*, Cal. Bus. & Prof. Code § 17203.

The California Supreme Court confirmed that the test for determining a

violation of the UCL under section 17200 "is a disjunctive one. Plaintiff may show that the acts or practices at issue are either unlawful or unfair or deceptive." *Coast Plaza Doctors Hospital v. UHP Healthcare*, 105 Cal.App.4th 693 (2002), citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*, 20 Cal.4th 163, 180 (1999).

> Section 17200 is not confined to anticompetitive business practice but is equally directed toward "'the right of the public to protection from fraud and deceit.'" Furthermore, the section 17200 proscription of "unfair competition" is not restricted to deceptive or fraudulent conduct but extends to any unlawful business practice. The Legislature apparently intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur.

*Stoiber v. Honeychuck,* 101 Cal.App.3d 903, 927 (1980), internal citations omitted.

### 1.   Specific Instances of Ms. Brightwell's Unlawful Business Practices

The two UCL violations which have become apparent by Ms. Brightwell's repertoire of conduct: (i) "Dine and Dash" attorney representation, and (ii) taking data which is not hers to take.

#### i.   "Dine and Dash" on Attorney Representation.

Ms. Brightwell has habitually entered into fee agreements with attorneys to represent her to recover her allegedly stolen business interests. [FACC, ECF 51 ¶ 13, 16-22, 24-26, 32, 33, 48, 59, 61, 64, 65.] TMLF was simply third—that it knows of—in a series of lawyers who suffered the loss of their fee after Ms. Brightwell alleged penury or some other preconceived "cap" as to what she'd pay, which she did not disclose beforehand.

As stated above, "What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1117 (C.D. Cal., 2001), citing *Payne v. United California Bank* (1972) 23 Cal.App. 3d 850, 856 (1972). "The essential test [of unfair competition] being whether the public is likely to be deceived." *People v. McKale*, 25 Cal. 3d 626, 635 (1979)

citing *People ex rel. Mosk v. National Research Co. of Cal.,* 201 Cal.App.2d 765, 772 (1962).

> A practice is prohibited as unfair or deceptive even if not unlawful and vice versa. . . . The independent unfairness prong of the statute is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim balanced against the reasons, justifications, and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. An unfair business practice occurs when the practice offends an established public policy or when the practice is immoral unethical, oppressive, unscrupulous or substantially injurious to consumers. . . . It is only necessary to show that members of the public are likely to be deceived.

*Podolsky v. First Healthcare Corp.,* 50 Cal.App.4th 632, 647-648 (1996).

A more recent case had held "In consumer cases arising under the UCL, a business practice is "unfair" if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves *Klein v. Chevron U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1376 (2012). "Whether a practice is … unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer. *Id.*

TMLF, as established above, was at least the third law firm engaged by Ms. Brightwell to represent her. [FACC, ECF 51 ¶ 13, 16-22, 24-26.] The two previous firms with whom Ms. Brightwell engaged to represent her in the underlying action against Mr. O'Donnell and R.F. Logistics LLC suffered the same fate as TMLF: they provided substantive services which benefitted Ms. Brightwell, and for which they were not fully compensated as promised, due to Ms. Brightwell's undisclosed "cap" on the fees she intended to pay before moving on to another firm. [*Id.*]

Giving plausibility to the claim, TMLF, like the other law firms listed in the FACC, was a vendor to Ms. Brightwell's business in defending against her lawsuit, as law firms are in the business of providing services to such clients. Ms.

Brightwell's business practices of hiring firms, wracking up large sums of fees owed for the services provided, and then ceasing to pay after reaching her internally-set limit with the firm— wherein she likely switched firms due to the expectation that work productivity would sink upon her refusal to pay their fees—such business practices are unlawful, deceptive, unfair, unethical, and unscrupulous.

In *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal.App.3d 699, 262 Cal. Rptr. 899 (1989), the court confronted not unlike TMLF and the prior law firms. There, a grape grower sued a winery for breach of a contract to purchase the grower's grapes. The grower's complaint included a cause of action for unfair business practices under the UCL, and sought restitution on behalf of "all growers under contract to [the winery] in 1982." *Id.* at 715. It asserted that the winery had wrongfully rejected grapes, adopted arbitrary quality standards, applied quality standards so as to pay less for grapes than the price contemplated by the growers' contracts, and sued and threatened to sue growers who complained of these practices. *Id.* The winery's motions to strike the claims asserted on behalf of non-party growers, or alternatively, to require that the matter proceed as a class action were denied. *Id.* at 715-16. Thereafter, the trial court awarded restitution damages to twenty-seven growers, concluding that the winery secretly determined the price it would pay on the basis of visible defects in the grapes rather than sugar content, resulting in substantial underpayments to the growers. *Id.* at 717. On appeal, the court reversed the judgment ordering restitution, but only as to the nonparty growers *See, Id.* at 717.

ii.    <u>Taking Data That is Not Hers to Take.</u>

Ms. Brightwell was alleged to have absconded with data from R.F. Logistics LLC. [FACC, ECF 51 ¶ 86; *see also* ECF 51 Exhibit B (R.F. Logistics Crosscomplaint ¶ 17, 19, 25-31).] Here, Ms. Brightwell's counsel has openly admitted that he possessed private data from TMLF's servers. [FACC, ECF 51 ¶

85.] Ms. Brightwell alleged in her Amended Complaint that the data was there for the taking. [Amended Complaint ECF 16 ¶ 17.] The inference raised by these undisputed facts is that Ms. Brightwell took TMLF's data and gave it to her counsel, Mr. Heinlein. The fact that Ms. Brightwell knew there was other data that she could have taken, despite TMLF's efforts to exclude her from its network [FACC, ECF 51 ¶ 82-83], was a matter that Ms. Brightwell all but boasted of in her Amended Complaint. [Amended Complaint ECF 16 ¶ 17.]

Although the stated instances with Ms. Brightwell taking data from Mr. O'Donnell and TMLF are the only documented examples of which TMLF is aware, the fact that TMLF's claims against Ms. Brightwell for taking data is *not* the first of its kind, this strongly supports TMLF's theory that this kind of conduct is not solely isolated to the instant case. Indeed, based on Ms. Brightwell's willingness to leave law firms with staggering outstanding bills for providing successful services to her, TMLF is confident that, through discovery, more examples of this kind of unfair conduct will be brought to light supporting TMLF's claims.

## VI.   CONCLUSION

This Court should deny Ms. Brightwell's Motion to Dismiss the First Amended Counterclaim or, in the alternative, if not additionally, grant TMLF leave to amend and that the Second Amended Counterclaims be filed.

Respectfully submitted,

THE MCMILLAN LAW FIRM, APC

Date: September 4, 2017

BY:   /s/ Scott A. McMillan
Scott A. McMillan, SBN 212506
Lauren Hanley-Brady, SBN 299644
Attorneys for Counterclaimant
The McMillan Law Firm, A.P.C.

---

COUNTERCLAIMANT'S OPPOSITION TO
*16-01696*   COUNTERDEFENDANT'S MOTION TO DISMISS   25