Scott A. McMillan, CBN 212506
Lauren Hanley-Brady, CBN 299644
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, CA 91941-5230
Tel (619) 464-1500 x 14
Fax (619) 828-7399
email: scott@mcmillanlaw.us

Attorneys for Counterclaimant and Defendant, The McMillan Law Firm, APC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, APC, a professional corporation, SCOTT A. MCMILLAN, an individual, MICHELLE D. VOLK, an individual, and DOES 1 through 25, inclusive, Defendants. | Case No.  16-cv-01696-W-NLS<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF COUNTERCLAIMANT'S OPPOSITION TO MOTION TO DISMISS**<br><br>[No Oral Argument Pursuant to Civ. Local Rule 7.1(d)(1)] |
| THE MCMILLAN LAW FIRM, APC, a California Professional Corporation,<br><br>    Counterclaimant,<br><br>v.<br><br>L. LEE BRIGHTWELL, an individual;<br><br>    Counterdefendant, | Hearing Date: September 18, 2017<br>Courtroom: 3C<br>Judge: Thomas J. Whelan<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: June 30, 2016 |

Pursuant to Fed. R. Evid. 201, Counterclaimant The McMillan Law Firm, APC hereby requests judicial notice of the following court records, true and correct copies of which are attached hereto, in support of Counterclaimant's opposition to Counterdefendant Brightwell's Motion to Dismiss the First Amended Counterclaim:

**No. 1 - Lee Brightwell's First Amended Complaint in this Action filed 12/7/16 [ECF 16]. [Document 1].**

A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' " *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation omitted), overruled on other grounds as stated in *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Matters of public record subject to judicial notice are an exception to this rule. See *id.* at 688–90. However, this exception may not exceed the outer bounds of Rule 201—it may not allow for the introduction or consideration of disputed facts, or facts that would contradict those alleged in the complaint. *See id.* at 690.

The First Amended Complaint filed in this case contains judicial admissions by Counterdefendant.  Counterdefendant Brightwell's First Amended Complaint filed in this action is referenced significantly throughout Counterclaimant TMLF's opposition.

**No. 2 - Counterclaimant's August 28, 2017 Motion For Leave to Amend the First Amended Counterclaims Docket ECF 58.**

A district court may take judicial notice of documents filed in any Federal or state court. (*Holder v. Holder* (9th Cir. 2002) 305 F.3d 854, 866 [Federal appellate court judicially noticed state appellate opinion and briefs and determined that waiver issue had not actually been litigated or necessarily decided].) Judicial

1   notice is particularly appropriate for the court's own records in prior litigation

2   related to the case before it. *No Cost Conference, Inc. v. Windstream Communs.,*

3   *Inc.*, 940 F. Supp. 2d 1285, 1295 (S.D. Cal. 2013)*, citing Amphibious Partners,*

4   *LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008) (district court was

5   entitled to take judicial notice of its memorandum of order and judgment from

6   previous case involving same parties)

7        Counterclaimant TMLF's August 28, 2017 motion to amend the First

8   Amended Counterclaim has since been revised in the contemporaneously filed

9   proposed Second Amended Counterclaim in the manner described in the

10   contemporaneously-filed Declaration of Scott A. McMillan.   That motion has

11   neither been opposed yet, nor resolved.

12   **No. 3 - The February 5, 2014 Stipulated Protective Order entered in the**

13   **San Diego Superior Court case no. 37-2013-00046163-CU0BC-CTL.**

14   **[Document 2].**

15        A court may also "take judicial notice of matters of public record outside the

16   pleadings' and consider them for purposes of the motion to dismiss." (*Hayes v.*

17   *Woodford* (S.D. Cal. 2006)  444 F.Supp.2d 1127, 1137, quoting *Mir v. Little Co.*

18   *of Mary Hasp.* (9th Cir. 1988) 844 F .2d 646, 649.) This includes judicial notice of

19   other courts' proceedings, federal or state, where those proceedings directly relate

20   to matters before the court. *(Hayes, supra,* 444 F.Supp. 2d at 1137, citing *US. ex*

21   *rel. Robinson Rancheria Citizens Council v. Borneo* (9th Cir. 1992)  971 F.2d 244,

22   248[judicial notice of filings in "directly rated" Superior Court proceeding];

23   *Bennett v. Medtronic* (9th Cir. 2002) 285 F .3d 801, 803 n.2 [judicial notice of

24   Tennessee proceeding filings]; *Wordlogic Corp. v. Touchtype* (S.D. Cal. Nov. 4,

25   2015) 2015 U.S. Dist. LEXIS 180668, at *4 [judicial notice of Motion to

26   Withdraw as Counsel]; *Tonini v. Mandarich Law Grp.* (S.D. Cal. July 9, 2012)

27   2012 U.S. Dist. LEXIS 94598, at *5 [judicial notice of state court records].)

28        Counterdefendant has not challenged the existence of the protective order

1    entered in the California Superior Court action.   This document is offered for its

2    existence, rather than for the truth of any factual statements within it.

3         **No. 4** - The fact that "subdirectories" is a commonly understood term to

4    mean computer folders within other folders.

5         Counterdefendant Brightwell claims that the term 'subdirectories' is

6    "incomprehensible." [Brightwell Motion pg. 5.] Counterclaimant contends that the

7    term is sufficiently common so as to warrant judicial notice. "Courts take judicial

8    notice of matters of common knowledge." (*Ohio Bell Tel. Co. v. Public Utilities*

9    *Com.* (1937) 301 U.S. 292, 301 [57 S.Ct. 724, 729, 81 L.Ed. 1093, 1100].) Other

10   courts have defined 'subdirectories' in other industries, such as web design:

> Web sites consist of multiple web pages, which consist of individual computer files written in "hypertext markup language," or "HTML." The HTML files constituting a web site are located through a directory on a computer server. <u>A computer directory is like a card in an old-fashioned library catalog, that tells where to find a book on a shelf.</u> However a site's HTML files are referenced, they are linked together in the directory to create the whole web site. These links reflect the specific location of individual files within the server's structure of directories and subdirectories. The graphics on a web page are actually individual computer files to which that page's HTML file links, causing them to appear when the web page is displayed. <u>An individual graphic file may be in the same directory as the HTML file to which it's linked, or in a subdirectory,</u> or on another computer server altogether, and the link reflects that specific location.

18   (*United States v. Lee* (9th Cir. 2002) 296 F.3d 792, 794.)

19        Put more simply, in 1992 terms: "The design and layout in Macintosh

20   presents the disk files and subdirectories  ("objects") contained in a folder as icons

21   arranged two-dimensionally within the folder's window. (*Apple Computer, Inc. v.*

22   *Microsoft Corp.* (N.D.Cal. 1992) 799 F.Supp. 1006, 1036.)

                                    Respectfully submitted,

                          BY:   /s/ Scott A. McMillan
                                Scott A.  McMillan
                                Attorney for Counterclaimant
                                The McMillan Law Firm, A.P.C.

---

# DOCUMENT

# 1

JOSHUA M. HEINLEIN (SBN 239236)
joshua.heinlein@dinsmore.com
JOSEPH S. LEVENTHAL (SBN 221043)
joseph.leventhal@dinsmore.com
JESSICA G. WILSON (SBN 254366)
jessica.wilson@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 840
San Diego, CA 92101
Ph: (619) 356-3518
Fx: (619) 615-2082

Attorneys for Plaintiff
L. LEE BRIGHTWELL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, APC, a professional corporation, SCOTT A. MCMILLAN, an individual, MICHELLE D. VOLK, an individual, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 16-CV-01696-W-MDD<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **FRAUD;**<br>3. **PROFESSIONAL NEGLIGENCE;**<br>4. **BREACH OF FIDUCIARY DUTY; AND**<br>5. **DECLARATORY RELIEF;** |

DINSMORE &
SHOHL LLP
SAN DIEGO

**FIRST AMENDED COMPLAINT**

Plaintiff L. LEE BRIGHTWELL ("Brightwell") hereby alleges as follows:

### INTRODUCTION

1.     This case is about a law firm and two attorneys that agreed to prosecute a case on behalf of Brightwell and were paid handsomely to do so.  After being paid over $100,000 for just a few months' work, defendants presented Brightwell with a 74-page bill for another $60,000!  The bill stretched back several months, included duplicative entries, and contained numerous fraudulent entries. When Brightwell asked for time to review the lengthy the bill, defendants immediately filed a motion to withdraw as counsel of record calculating that Brightwell would capitulate so as not to jeopardize settlement negotiations in the underlying case.   When Brightwell refused to give in to defendants' threats, defendants withdrew forcing Brightwell to retain new counsel, incur thousands of dollars in additional attorneys' fees, and settle for less than she otherwise would have.  Defendants now contend that Brightwell not only owes them the original disputed amount, but substantially more, including a contingency fee even though defendants voluntarily withdrew from the case.

### PARTIES

2.     Brightwell is, and at all times mentioned herein was, an individual residing in the State of Hawaii.

3.     Defendant The McMillan Law Firm, APC ("McMillan Firm") is, and at all times mentioned herein was, a professional corporation licensed to do business and doing business in the State of California, County of San Diego.

4.     Defendant Scott A. McMillan ("McMillan") is, and at all times mentioned herein was, an individual residing in the State of California, County of San Diego.  Brightwell is informed and believes and based thereon alleges that McMillan is the principal shareholder of the McMillan Firm.

5.     Defendant Michelle D. Volk ("Volk") is, and at all times mentioned herein was, an individual residing in the State of California, County of San Diego.

**FIRST AMENDED COMPLAINT**

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this counterclaim under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because all Defendants reside in this judicial district.

## BRIGHTWELL RETAINS DEFENDANTS

8.     On or about April 25, 2013, Brightwell filed a complaint in San Diego Superior Court against Brian O'Donnell and RF Logistics, LLC, *Brightwell v. O'Donnell, et al.*, Case No. 37-2013-00046163-CU-BC-CTL ("O'Donnell Action"). Approximately a year and a half into the case, on September 29, 2014, Brightwell retained Defendants to substitute in as her counsel in the O'Donnell Action. A true and correct copy of the Engagement Agreement between Defendants and Brightwell is attached hereto as Exhibit A.

9.     By reason of the attorney-client relationship identified above, Defendants owed fiduciary duties to Brightwell to adequately and professionally handle the O'Donnell Action, to further and protect the interests of Brightwell, and to charge Brightwell only honest and reasonable fees.

10.     At the time Defendants substituted into the case, trial was set for November 2014. In October 2014, the trial date was continued to March 2015. Immediately after being retained by Brightwell, Defendants demanded that Ms. Brightwell travel to San Diego to work on-site in their office to help prepare the case for trial despite knowing that Brightwell lived in Hawaii. This demand was not communicated to Ms. Brightwell prior to signing the Engagement Agreement. Nonetheless, she traveled to San Diego at Defendants' request, and worked in Defendants' office daily. In fact, Mr. McMillan strongly encouraged Ms. Brightwell to live in Defendants' office so she could be working on the case at all times. Understandably, Ms. Brightwell declined to do so. After two weeks,

2.     Case No. 16-cv-01696-W-MDD

Brightwell intended to return home, but Defendants demanded that she stay in San Diego longer. Brightwell acquiesced and stayed in San Diego an additional few weeks helping Defendants prepare the case for trial. During this time, Defendants told Brightwell she would be supervising their intern, an attorney from France that was not licensed in California. Defendants told Brightwell she had to be on-site to perform this work or they would stop all work on her case.

11. By December 6, 2014, Brightwell had returned home to Hawaii. By that time, she had already given Defendants a retainer of $10,000 and had paid Defendants' invoices for October and November totaling $30,000. Despite this, on December 13, 2014, Defendants sent Brightwell a substitution of attorney form asking that she sign it because she was no longer on-site in their office working on the case full time. Ultimately, Brightwell did not sign it, but continued to pay Defendants' invoices.

12. On January 6, 2015, Defendants sent Brightwell another substitution of attorney form demanding that she sign it again because they wanted her to return to their office to work on the O'Donnell Action and supervise their intern. Brightwell did not sign it.

13. When the March 2015 trial date arose, no courtroom was available. Subsequently, the trial date was continued to October 2, 2015.

14. On March 15, 2015, Defendants sent Brightwell an invoice totaling $23,446.91. By March 25, 2015, that invoice was fully paid.

15. On April 14, 2015, Brightwell voluntarily paid Defendants another $15,000 despite having not received an invoice since March 15, 2015. As of that time, Brightwell had paid Defendants over $115,000. A spreadsheet of invoices and payments is attached hereto as Exhibit B.

16. While Defendants were racking up high legal bills, Defendants continued demanding that Brightwell work onsite in Defendants' office to prepare exhibits and perform other tasks to prepare for trial. Defendants claimed that this

was "part of the agreement," even though it is not set forth in the Engagement Agreement, and told Brightwell that her active participation would result in higher quality legal work and lower costs. At Defendants' insistence, between October 1, 2014 and April 30, 2015, Brightwell spent a total of four months working in Defendants' office.

17. During this time, Defendants provided Ms. Brightwell with access to their entire computer network, telling her it would be more efficient if she had access to their system and files so she could work on the O'Donnell Action. Defendants lacked the competence to limit Ms. Brightwell's access to only the files for the O'Donnell Action. Consequently, Defendants gave her access to their entire system such that she could access the files for all of Defendants' cases and clients. Defendants did not require Ms. Brightwell to sign a confidentiality agreement before giving her access to their network.

18. Brightwell's work onsite at Defendants' office did not result in higher quality legal work or lower costs. Instead, Brightwell had to forego several job opportunities in Hawaii and incurred rent and other charges while living in San Diego to work at Defendants' office at their request. While at Defendants' office, Brightwell was subjected to being yelled at and harassed routinely by McMillan. Brightwell witnessed McMillan berate, taunt, and humiliate his employees on a daily basis. As a result of McMillan's abusive behavior, she was able to see first-hand the staff turnover and duplication of time and effort in Defendants' office. The constant turnover meant that new employees always had to spend time to get up to speed on the O'Donnell Action and figure out where the prior attorney or staff member left off. At times, work product was tossed aside and started anew when an attorney or staff member left the firm due to unfavorable working conditions. This happened numerous times in the 10 month period McMillan represented Brightwell. Though Brightwell had already paid for that attorney's research and effort, she was consequently billed again when the next attorney or staff member

recreated the same document. This, of course, resulted in higher legal bills and poorer quality of work.

19. Eventually, Brightwell learned of the reasons for McMillan's erratic behavior. After working in Defendants' office for several weeks, McMillan disclosed to Brightwell that he regularly takes lithium to "improve his memory", as he would say. He even offered some to Ms. Brightwell, but she declined. Also, while Brightwell was working in Defendants' office, she saw McMillan regularly abuse controlled substances, such as prescription and non-prescription drugs. On one occasion, McMillan told Ms. Brightwell that he took his son's ADHD medicine to help him stay awake and work more. McMillan offered drugs to Ms. Brightwell on several occasions and regularly offered drugs to his staff. While disturbed by McMillan's conduct, Ms. Brightwell did not feel like she could change attorneys again so close to trial in the O'Donnell Action. Ms. Brightwell is informed and believes and based thereon alleges that Ms. Volk knew of McMillan's drug abuse and failed to report it or notify Defendants' clients.

20. Furthermore, on the eve of trial in the O'Donnell Action, Ms. Brightwell learned that two years prior, McMillan had been involved in a car accident that caused him to suffer a traumatic brain injury ("TBI"). The TBI was so severe, that McMillan had to effectively stop practicing law for several months, and that others, including Ms. Volk, ran his practice for him while he was recovering. On information and belief, McMillan never fully recovered from the TBI and continues to have symptoms, such as mood swings, erratic behavior, and explosive anger, today. Just a few days before trial in the O'Donnell Action was scheduled to begin in March 2015, Defendants let slip that this was going to be the first trial McMillan had done since the accident and that McMillan wasn't sure if he could handle a trial at all, let alone a lengthy trial of a complex and emotional case such as the O'Donnell Action. In fact, in the two weeks leading up to the March 2015 trial date, Defendants put great pressure on Brightwell to settle the O'Donnell

1  Action for far less than the amount Defendants originally told Brightwell the case

2  was worth.  Cautious not to anger McMillan, Brightwell asked McMillan if he was

3  "trying to get out of taking the case to trial."  McMillan responded saying, "Are you

4  asking if I am wussing out?"  Brightwell shrugged and McMillan told her maybe he

5  was but to be careful as "calling him out" could cause him to tank the case.

6      21.    Additionally, on October 22, 2014, the Court in the O'Donnell Action

7  issued a protective order that allowed for sensitive information such as company

8  Quickbooks files, bank statements, credit card statements and employee payroll

9  details to be produced as "Attorneys' Eyes Only," meaning only the attorneys and

10  outside experts in the case and not the parties themselves could review the

11  documents.  On October 30, 2014, just eight days later, Defendants intentionally

12  sent Ms. Brightwell information designated by O'Donnell as "Attorneys' Eyes

13  Only" for her to review and analyze.  Over two months later, Defendants asked Ms.

14  Brightwell to destroy any record she had of receiving such Attorneys' Eyes Only

15  information and never disclosed to O'Donnell's attorneys the violation of the

16  protective order.  But, Defendants still demanded that Ms. Brightwell review every

17  exhibit marked for trial in the O'Donnell Action, including those marked

18  Attorneys' Eyes Only.

19      22.    On or about May 31, 2015, Defendants sent Brightwell an invoice for

20  $59,689.27.  This was the first invoice Defendants had sent her in nearly three

21  months!  Just eleven days later, on June 11, 2015, Defendants sent Brightwell an

22  email demanding that she sign a substitution of attorney form because,

23  understandably, she had not yet paid the invoice.  Almost immediately thereafter,

24  McMillan began threatening to file a motion to withdraw as counsel of record.

25  Using this threat as leverage to force Brightwell to pay, he told Brightwell filing

26  such a motion would almost certainly damage her position in the O'Donnell Action

27  and the settlement discussions that the parties were currently engaging in.

28

23.     The Engagement Agreement states: "It is essential that you advise me promptly of any questions you may have so that I may resolve any difficulties as quickly as possible, and avoid any interference with our attorney-client relationship. You agree that if you have not informed me of questions or objections within forty-five calendar days after the date of a statement, that statement will be conclusively regarded as accepted and approved by you, and that you will not be entitled thereafter to object to that statement."  Nonetheless, on July 9, 2015, Defendants filed a motion to be relieved as counsel in the O'Donnell Action, less than 45 days after presenting Brightwell with the May 31 invoice.

24.     While the motion for withdrawal was pending, the parties in the O'Donnell Action continued settlement discussions.  During those discussions, Defendants continuously represented to Brightwell that they believed they could get the O'Donnell defendants to increase their settlement offers, but would only do so once Brightwell paid the outstanding invoice.  In response, Brightwell instructed Defendants to settle the case at the highest possible amount, but that she would accept the O'Donnell defendants' last best offer.  She further instructed Defendants that if they could not get the O'Donnell defendants to increase their offer prior to the hearing on Defendants' motion to withdraw as counsel of record, to accept the O'Donnell defendants' last best offer before the hearing.

25.     Defendants refused to abide by Brightwell's instructions.

26.     Ms. Brightwell's instructions to Defendants to accept the O'Donnell defendants' last best offer were the result of Defendants' negligence and unlawful conduct.  Early in the O'Donnell Action, Ms. Brightwell's expert estimated her damages at approximately $2 million.  Defendants routinely told Ms. Brightwell that they believed the O'Donnell defendants would pay nearly $1 million to settle the case.  But, due to her observations working in Defendants' office for four months, witnessing McMillan's drug abuse, and eventually learning of his TBI and lack of confidence in his own trial abilities, her confidence in Defendants' ability to

prosecute and potentially try the O'Donnell Action waned severely. By the time the hearing on Defendants' motion to withdraw was near, Brightwell was afraid that if she did not accept the O'Donnell defendants' last best offer, she would lose at trial due to Defendants' incompetence.

27. On July 31, 2015, the court granted Defendants' motion to withdraw as counsel of record in the O'Donnell Action. Within hours after the motion was granted, McMillan told Brightwell that Defendants were willing to stay on as counsel of record if Brightwell hired an attorney in Hawaii to supervise Defendants to make sure they were not taking advantage of Brightwell or committing malpractice. Of course, this arrangement was unacceptable to Brightwell.

28. On or about August 4, 2015, Brightwell retained the undersigned counsel to represent her in the O'Donnell Action. On August 14, 2015, the parties to the O'Donnell Action agreed to a settlement in principal, and on November 19, 2015, the parties to the O'Donnell Action executed a settlement agreement.

29. On or about August 28, 2015, Defendants sent their final invoice to Brightwell claiming for $64,922.59 in hourly attorneys' fees and costs plus an additional $87,000 for Defendants' purported contingency fee even though Defendants voluntarily withdrew from the O'Donnell Action prior to settlement for a total of $151,922.59 purportedly due and owing.

30. A review of **all** of Defendants' invoices show numerous duplicative and unsubstantiated billing entries during the course of the entire engagement. For example, there is a billing entry dated July 24, 2015, for two hours of McMillan's time drafting his motion to withdraw as counsel of record:

| 7/24/2015 SAM Draft/revise | | | 2.00 | 450.00 |
|---|---|---|---|---|
| | Draft/revise motion to withdraw. | | 225.00/hr | |

But, Defendants' motion to withdraw had already been filed 2 weeks prior, on July 9, and Defendants' own invoice shows that they filed their reply brief the day before, on July 23, 2015.

31. As another example, on June 30, 2015, McMillan made the following time entries:

| 6/30/2015 SAM | Communicat/CLI<br>Call to client. | 0.20<br>225.00/hr | 45.00 |
| | SAM | Communicat/MISC<br>Call to Marion Miller.  Left message re effort to contact Lee. | 0.20<br>225.00/hr | 45.00 |

This is clear double-billing.  McMillan is charging Brightwell twice for the same activity: once for attempting to contact Brightwell through a third party (Ms. Miller) and then again claiming he actually spoke with Brightwell.

32. Similarly, on May 1, 2015, McMillan has two separate time entries for one hour each simply saying "Discussion with client."  Brightwell did not have two separate one-hour conversations with McMillan on that date.

33. Another example is on February 24, 2015, Volk has two time entries with the exact same description:

| 2/24/2015 MV | Communicat/FIRM<br>Meeting with Scott to discuss the need for the purchase and sale documents of the Esparanza property in Chula Vista. Discuss Brians arguments in cross complaint re: same. Discuss the original plan that Brian would buy into the house, but did not have funds. Prepare email to Lee re: request for sale documents. | 0.20<br>200.00/hr | 40.00 |

| 2/24/2015 | | | |
| | MV | Communicat/FIRM<br>Meeting with Scott to discuss the need for the purchase and sale documents of the Esparanza property in Chula Vista. Discuss Brians arguments in cross complaint re: same. Discuss the original plan that Brian would buy into the house, but did not have funds. Prepare email to Lee re: request for sale documents. | 0.20<br>200.00/hr | 40.00 |

34. Defendants also billed Brightwell for time they spent working on other cases.  Defendants further inflated their bills by having multiple attorneys perform the same tasks, by failing to properly supervise young attorneys, and by charging Brightwell for time spent by other attorneys and staff having to re-do work.

DINSMORE & SHOHL LLP
SAN DIEGO

**FIRST AMENDED COMPLAINT**

1  Defendants also concealed the amount of attorneys' fees and costs they were billing
2  by failing to present Brightwell with a bill for two and a half months.

3      35.    By inflating their bills, billing Brightwell for work unrelated to her
4  case, failing to follow Brightwell's instructions regarding settlement, and inducing
5  Brightwell to work onsite in Defendants' office, Defendants have breached the
6  Engagement Agreement, their fiduciary duties to Brightwell, and breached the duty
7  of care of a competent attorney.

8      36.    Since the parties to the O'Donnell Action settled that case, Defendants
9  informed the undersigned counsel that they claim a right to $151,922.59
10  ("Settlement Funds") in attorneys' fees and costs from the proceeds from the
11  settlement of the O'Donnell Action.  Defendants have retained $10,462.34 of
12  Brightwell's funds in their trust account.  The undersigned counsel, therefore, has
13  retained $141,460.25 in their trust account and will continue to do so until this
14  matter is resolved.  There now exists a dispute between Brightwell and Defendants
15  as to the rights to the Settlement Funds.

16              **FIRST CAUSE OF ACTION**

17          **(Breach of Contract Against All Defendants)**

18      37.    Brightwell incorporates by reference the above allegations as though
19  fully set forth herein.

20      38.    On or about September 29, 2014, Brightwell and Defendants entered
21  into the Engagement Agreement.

22      39.    By entering into the Engagement Agreement, Defendants agreed to
23  adequately and professionally handle the O'Donnell Action, to further and protect
24  the interests of Brightwell, and to charge Brightwell only honest and reasonable
25  fees.

26      40.    Brightwell has performed or, through Defendants' conduct, has been
27  excused from performing all conditions, covenants, and promises required of her
28  under the Engagement Agreement.

41.     As set forth above, Defendants have breached the Engagement Agreement by, among other things, failing to perform their work with the requisite work and skill of qualified attorneys, failing to abide by Brightwell's instructions pertaining to settlement of the O'Donnell Action, and inflating time entries for work performed, and double-charging Brightwell for tasks performed in the O'Donnell Action.

42.     As a proximate result of Defendants' conduct, Brightwell has been damaged in an amount to be proven at trial.

**S<small>ECOND</small> C<small>AUSE OF</small> A<small>CTION</small>**

**(Fraud Against All Defendants)**

43.     Brightwell incorporates by reference the above allegations as though fully set forth herein.

44.     Prior to and after executing the Engagement Agreement, Defendants represented to Brightwell that they would adequately and professionally handle the O'Donnell Action, to further and protect the interests of Brightwell, and to charge Brightwell only honest and reasonable fees.  Prior to executing the Engagement Agreement, Defendants failed to inform Brightwell of McMillan's drug abuse, TBI, and lack of confidence in their ability to take the O'Donnell Action to trial.  In fact, to induce Brightwell to enter into the Engagement Agreement, Defendants represented that they had the skill and confidence to try the O'Donnell Action.

45.     During the course of representing Brightwell in the O'Donnell Action, McMillan, on behalf of himself and all Defendants, represented to Brightwell that she needed to move to San Diego to work in Defendants' office for several months, and that doing so would result in higher quality legal work and lower costs.

46.     In addition, Defendants knowingly supplied Brightwell with fraudulent invoices.  Specifically, Defendants' invoices included duplicative entries, entries for work that was not performed, and/or entries in which time spent on tasks was inflated beyond the amount of time they actually spent on those matters.

47. Defendants engaged in such fraudulent conduct so that they could (and ultimately did) unjustly increase their profits at Brightwell's expense.

48. At the time Defendants made these representations and fraudulent billing entries, Defendants knew them to be false and made them with the intention to induce Brightwell to act in reliance on these representations and billing entries.

49. In reliance on Defendants' representations before and after entering into the Engagement Agreement and in reliance on Defendants' billing entries, Brightwell took several actions including entering into the Engagement Agreement, moving to San Diego for several months and working at Defendants' office as well as paying Defendants over $115,000.

50. As a proximate result of Defendants' conduct, Brightwell has been damaged in an amount to be proven at trial.

51. Defendants engaged in such fraudulent conduct so that they could (and ultimately did) unjustly increase their profits at Brightwell's expense. This conduct was despicable and carried out with a conscious disregard of the legal rights of Brightwell. Defendants' conduct thus constituted malice, oppression, and/or fraud under California Civil Code section 3294.

## THIRD CAUSE OF ACTION

### (Professional Negligence Against All Defendants)

52. Brightwell incorporates by reference the above allegations as though fully set forth herein.

53. As alleged above, Defendants failed to exercise reasonable care and skill in performing legal services for Brightwell.

54. Had Defendants exercised proper care and skill in the O'Donnell Action, Brightwell would have obtained a greater settlement in the O'Donnell Action and would not have had to incur additional attorneys' fees and costs to retain new counsel to settle the O'Donnell Action. Brightwell also would have paid Defendants less for their services in the O'Donnell Action because Defendants

DINSMORE &
SHOHL LLP
SAN DIEGO

**FIRST AMENDED COMPLAINT**

1  would not have submitted duplicative, inflated, and fraudulent billing entries on
2  their invoices.

3  55.    As a proximate result of Defendants' conduct, Brightwell has been
4  damaged in an amount to be proven at trial.

5  **FOURTH CAUSE OF ACTION**

6  **(Breach of Fiduciary Duty Against All Defendants)**

7  56.    Brightwell incorporates by reference the above allegations as though
8  fully set forth herein.

9  57.    A fiduciary duty is a duty of the highest character.  Attorneys have a
10 duty of undivided loyalty to each of their clients, and must not put other interests,
11 including their own financial interests, ahead of the best interests of their clients.
12 This includes a fiduciary's duty to take such steps as are required to protect the
13 interests of the party to whom the fiduciary duty is owed.

14 58.    At all times herein, Defendants owed a fiduciary duty to Brightwell.
15 Brightwell had reasonably placed her trust and confidence in Defendants' fidelity
16 and integrity.  As alleged above, Defendants did not take reasonable steps to protect
17 the interests of Brightwell, to whom they owed a fiduciary duty, and in fact placed
18 their own interests and financial gain ahead of Brightwell's best interests.

19 59.    By nature of the conduct described above, Defendants breached the
20 fiduciary duties owed to Brightwell.

21 60.    As a direct and proximate result of the breach of fiduciary duty,
22 constructive fraud, actual fraud, and failure to follow Brightwell's instructions,
23 Brightwell has been damaged in an amount to be proven at trial.

24 61.    The conduct of Defendants, as more fully described above and
25 incorporated by reference herein, was despicable and carried out with a conscious
26 disregard of the legal rights of Brightwell.  The conduct of Defendants therefore
27 constituted malice, oppression, and/or fraud under California Civil Code section
28 3294.

Dinsmore & Shohl LLP
San Diego

13.    Case No. 16-cv-01696-W-MDD

**FIRST AMENDED COMPLAINT**

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

62.     Brightwell incorporates by reference the above allegations as though fully set forth herein.

63.     An actual controversy has arisen and now exists between Brightwell and Defendants concerning their respective rights to the Settlement Funds in that Defendants contend they are entitled to receive the entirety of the Settlement Funds, whereas Brightwell disputes these contentions and contends that she is entitled to receive the entirety of the Settlement Funds.

64.     Brightwell desires a judicial determination of her rights to the Settlement Funds, and a declaration that she is entitled to receive the entirety of the Settlement Funds.

65.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights to the Settlement Funds.

### PRAYER FOR RELIEF

WHEREFORE, Brightwell prays for judgment as follows:

1.     For general and special damages according to proof including, but not limited to, a refund of all amounts Brightwell paid to Defendants;

2.     For a declaration that she is entitled to receive the entirety of the Settlement Funds totaling $151,922.59;

3.     For prejudgment interest;

4.     For punitive damages in an amount sufficient to punish Defendants and to deter future willful misconduct by Defendants;

5.     For costs of suit herein; and

6.     For such other and further relief as the Court deems just and proper.

///

///

DINSMORE &
SHOHL LLP
SAN DIEGO

**FIRST AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of any and all issues triable with right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  December 7, 2016          DINSMORE & SHOHL, LLP


By:  /s/ Joshua M. Heinlein
     JOSHUA M. HEINLEIN (SBN 239236)
     JOSEPH S. LEVENTHAL (SBN 221043)

     Attorneys for Plaintiff
     L. LEE BRIGHTWELL

DINSMORE &
SHOHL LLP
SAN DIEGO

# DOCUMENT 2

FEB 5 '14 PM 2:07

Harvey C. Berger (SBN 102973)
Stephanie Reynolds (SBN 220090)
**POPE, BERGER & WILLIAMS, LLP**
3555 Fifth Avenue, Suite 300
San Diego, California 92103
Telephone: (619) 595-1366
Facsimile: (619) 236-9677

Attorneys for Defendants/Cross-Complainants
RF LOGISTICS, LLC and BRIAN O'DONNELL

F I L E D
Clerk of the Superior Court

FEB 0 5 2014

By: LEE RYAN, Deputy

VIA FAX

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

## CENTRAL DIVISION

| | |
|---|---|
| L. LEE BRIGHTWELL,<br><br>          Plaintiff,<br><br>     v.<br><br>RF LOGISTICS, LLC ; BRIAN O'DONNELL; and DOES 1 through 25, inclusive,<br><br>          Defendants.<br><br>RF LOGISTICS, LLC; and BRIAN O'DONNELL,<br><br>          Cross-Complainants,<br><br>vs.<br><br>L. LEE BRIGHTWELL,<br><br>          Cross-Defendant. | Case No. 37-2013-00046163-CU-BC-CTL<br>**IMAGED FILE**<br><br>Judge: Hon. Ronald S. Prager<br>Dept.: C-71<br><br>**STIPULATED PROTECTIVE ORDER**<br><br><br><br><br><br>Complaint Filed:          April 25, 2013<br>Cross-Complaint Filed:  September 13, 2013<br>Trial Date:          April 25, 2014 |

Plaintiff, L. Lee Brightwell ("Plaintiff") and Defendants RF logistics, LLC and Brian O'Donnell ("Defendants") (collectively referred to as the "Parties" or as a "Party") recognize that at least some of the documents and information ("materials") being sought through discovery in the above-captioned action are normally kept confidential by the Parties. As a result, the Parties have agreed to be bound by the terms of this Protective Order in this action.

1

STIPULATED PROTECTIVE ORDER

COPY

1    The materials to be exchanged throughout the course of the litigation between the Parties
2    may contain trade secret, confidential, or proprietary information, commercial information, or
3    information that is otherwise private information. The purpose of this Order is to protect the
4    confidentiality of such materials as much as practical during the litigation. THEREFORE:

5    **DEFINITIONS**

6       1.    The term "Confidential Information" will mean and include information contained or
7    disclosed in any materials, including documents, portions of documents, answers to interrogatories,
8    responses to requests for admissions, responses to request for production of documents, trial
9    testimony, deposition testimony, and transcripts of trial testimony and depositions, consisting of
10   business or financial records, documents containing trade secrets or proprietary information,
11   personnel records, medical or psychiatric records of the Parties, records or information on any
12   criminal history of the Parties, records or information on financial information of the Parties, records
13   and/or sexual history, any other personal document or information of the Parties or their employees
14   including data, summaries, and compilations derived therefrom that is deemed to be Confidential
15   Information by any Party to which it belongs.

16      2.    The term "materials" will include, but is not be limited to: documents;
17   correspondence, including electronic correspondence; memoranda; specifications; customer lists; or
18   other material that identify customers or potential customers; client lists; Quickbooks records;
19   financial statements; bank records and statements; billing information or schedules or other matter
20   identifying billing; minutes; telegrams; letters; statements; cancelled checks; contracts; invoices;
21   drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books;
22   expense accounts; recordings; photographs; motion pictures; compilations from which information
23   can be obtained and translated into reasonably usable form through detection devices; notes
24   (including notebooks and records); reports; instructions; disclosures; other writings; and other
25   physical objects.

26      3.    The term "counsel" will mean outside counsel of record, and other attorneys,
27   paralegals, secretaries, and other support staff employed in the following law firms: Pope, Berger &
28   Williams, LLP; Gruenberg Law; and Friedenthal, Heffernan & Klein, LLP, or any other counsel for

2
STIPULATED PROTECTIVE ORDER

1  the Parties.

2  **GENERAL RULES**

3  4.  Each Party to this litigation that produces or discloses any materials, answers to

4  interrogatories, responses to requests for admission, responses to requests for production of

5  documents, trial testimony, deposition testimony, and transcripts of trial testimony and depositions,

6  or information that the producing party believes should be subject to this Protective Order may

7  designate the same as "CONFIDENTIAL." Any Party may designate information as

8  "CONFIDENTIAL" only if, in the good faith belief of such Party and its counsel, the unrestricted

9  disclosure of such information could be potentially prejudicial to the individual, business or

10  operations of such Party.

11  5.  Any Party may designate information as "CONFIDENTIAL FOR COUNSEL

12  ONLY" only if, in the good faith belief of such Party and its counsel, the information is among that

13  considered to be most sensitive by the Party, including but not limited to trade secret or other

14  confidential research, development, financial or other commercial information, and any confidential

15  information or material pertaining to Plaintiff or Defendant Brian O'Donnell.

16  6.  In the event the producing party elects to produce materials for inspection, no

17  marking need be made by the producing party in advance of the initial inspection. For purposes of

18  the initial inspection, all materials produced will be considered as "CONFIDENTIAL FOR

19  COUNSEL ONLY" and must be treated as such pursuant to the terms of this Protective Order.

20  Thereafter, upon selection of specified materials for copying by the inspecting party, the producing

21  party must, within a reasonable time prior to producing those materials to the inspecting party, mark

22  the copies of those materials that contain Confidential Information with the appropriate

23  confidentiality marking.

24  7.  Whenever a deposition taken on behalf of any Party involves a disclosure of

25  Confidential Information of any Party:

26  a.  the deposition or portions of the deposition must be designated as containing

27  Confidential Information subject to the provisions of this Protective Order; such

28  designation must be made on the record whenever possible, but a Party may

1          designate portions of depositions as containing Confidential Information after

2          transcription of the proceedings; a Party will have until fourteen (14) days after

3          receipt of the deposition transcript to inform the other Party or Parties to the

4          action of the portions of the transcript to be designated "CONFIDENTIAL" or

5          "CONFIDENTIAL FOUR COUNSEL ONLY" and if not done so waives the

6          ability to designate same as "CONFIDENTIAL."

7      b. the disclosing party will have the right to exclude from attendance at the

8          deposition, during such time as the Confidential Information is to be disclosed,

9          any person other than the deponent, counsel (including their staff and associates),

10          Parties, the court reporter, and the person(s) agreed upon pursuant to paragraph 9

11          below; and

12      c. the originals of the deposition transcripts and all copies of the deposition must

13          bear the legend "CONFIDENTIAL" or "CONFIDENTIAL FOR COUNSEL

14          ONLY," as appropriate, and the original or any copy ultimately presented to a

15          court for filing must not be filed unless it can be accomplished under seal,

16          identified as being subject to this Protective Order, and protected from being

17          opened except by order of this Court only in the event the filed transcript or

18          portion of the transcript to be filed contains information or material subject to this

19          Protective Order.

20      8.     All Confidential Information designated as "CONFIDENTIAL" or

21 "CONFIDENTIAL FOR COUNSEL ONLY: must not be disclosed by the receiving party to anyone

22 other than those persons designated within this Protective Order and must be handled in the manner

23 set forth below and, in any event, must not be used for any purpose other than in connection with

24 this action, unless and until such designation is removed either by agreement of the Parties, or by

25 order of the Court.

26      9.     Information designated "CONFIDENTIAL FOR COUNSEL ONLY" must be viewed

27 only by counsel (as defined in paragraph 3) of the receiving party, by the Parties, and by

28 independent experts under the conditions set forth in this Paragraph. The right of any independent

1  expert to receive any Confidential Information will be subject to the advance approval of such expert

2  by the producing party or by permission of the Court.  The Party seeking approval of an independent

3  expert must provide the producing party with the name and curriculum vitae of the proposed

4  independent expert, and an executed copy of the form attached as Exhibit A, in advance of providing

5  any Confidential Information of the producing party to the expert.  Any objection by the  producing

6  party to an independent expert receiving Confidential Information must be made in writing within

7  fourteen (14) days following receipt of the identification of the proposed expert.  Confidential

8  Information may be disclosed to an independent expert if the fourteen (14) day period has passed

9  and no objection has been made.  The approval of independent experts must not be unreasonably

10  withheld. The producing party bears the burden of establishing that the Confidential Information is

11  not proper for release to the expert.

12         10.     Information designated "CONFIDENTIAL" must be viewed only by counsel (as

13  defined in paragraph 3 in "Definitions") of the receiving party, by independent experts (pursuant to

14  the terms of paragraph 9), and by the additional individuals listed below, provided each such

15  individual has read this Protective Order in advance of disclosure and has agreed in writing to be

16  bound by its terms:

17          A.     Attorneys of record for the Parties and their respective associates, paralegals

18                clerks, employees involved in the conduct of this litigation;

19          B.     Plaintiff L. Lee Brightwell;

20          C.     Defendant Brian O'Donnell;

21          D.     Defendant RF Logistics, LLC's officers, employees and agents to whom it is

22                reasonably necessary to disclose the Confidential Information for this

23                litigation;

24          E.     Outside consultants actually retained by a Party for the purpose of preparing

25                or assisting in this litigation, and their respective clerks and employees

26                involved in assisting them in this litigation, to the extent deemed necessary by

27                counsel, and who have signed the "Agreement To Be Bound By Protective

28                Order" attached as Exhibit A;

F.  Any person who was involved in the preparation of the documents, materials or the discovery responses containing Confidential Information or who lawfully received or reviewed the documents or to whom the Confidential Information has previously been made available other than by one receiving such Confidential information in connection with this action;

G.  Any person indicated on the face of the document to be its originator, author, or a recipient of a copy of the document, may be shown the same;

H.  Deponents or potential deponents, including specifically percipient witnesses, with respect to whom the attorney for the examining party believes in good faith that disclosure of Confidential Information should be made in order to conduct relevant examination of such deponent or whom may have discoverable information regarding the Confidential Information and who have signed the "Agreement To Be Bound By Protective Order" attached as Exhibit A;

I.  The Court and its personnel under seal pursuant to the provisions set forth below and/or for *in camera* review; and

J.  Court reporters, clerks and similar personnel, mediators, personnel involved in disciplinary proceedings, and similar personnel to whom it is reasonably necessary to disclose the Confidential Information for this action and who have signed the "Agreement To Be Bound By Protective Order" attached as Exhibit A.

11.  All information which has been designated as "CONFIDENTIAL" or "CONFIDENTIAL FOR COUNSEL ONLY" by the producing or disclosing party, and any and all reproductions of that information, must be retained in the custody of the counsel for the receiving party identified in paragraph 3, except that independent experts authorized to view such information under the terms of this Protective Order may retain custody of copies such as are necessary for their participation in this litigation.

12.  Before any materials produced in discovery, answers to interrogatories, responses to

6

1   requests for admissions, deposition transcripts, or other documents which are designated as
2   Confidential Information are filed with the Court for any purpose, the Party seeking to file such
3   material must seek permission of the Court to file the material under seal in the event the filed
4   materials include information or material subject to this Protective Order.  The opposing Party or
5   Parties may oppose such request within five (5) calendar days of receiving notice and must notify
6   the Court that an opposition to the request will be filed.

7       13.    At any stage of these proceedings, any Party may object to a designation of the
8   materials as Confidential Information.  The Party objecting to confidentiality must notify, in writing,
9   counsel for the designating party of the objected-to materials and the grounds for the objection.  If
10  the dispute is not resolved consensually between the parties within seven (7) days of receipt of such
11  a notice of objections, the objecting party may move the Court for a ruling on the objection.  The
12  materials at issue must be treated as Confidential Information, as designated by the designating
13  party, until the Court has ruled on the objection or the matter has been otherwise resolved. If the
14  issue is placed before the Court, the burden is on the producing party to establish that the
15  information qualifies as Confidential Information.

16      14.    All Confidential Information must be held in confidence by those inspecting or
17  receiving it, and must be used only for purposes of this action. Counsel for each Party, the Parties,
18  and each person receiving Confidential Information must take reasonable precautions to prevent the
19  unauthorized or inadvertent disclosure of such information. If Confidential Information is disclosed
20  to any person other than a person authorized by this Order, the Party responsible for the
21  unauthorized disclosure must immediately bring all pertinent facts relating to the unauthorized
22  disclosure to the attention of the other Parties and, without prejudice to any rights and remedies of
23  the other Parties, make every effort to prevent further disclosure by the Party and by the person(s)
24  receiving the unauthorized disclosure.

25      15.    No Party will be responsible to another Party for disclosure of Confidential
26  Information under this Protective Order if the information in question is not labeled or otherwise
27  identified as such in accordance with this Protective Order.

28      16.    If a Party, through inadvertence, produces any Confidential Information without

7

STIPULATED PROTECTIVE ORDER

1 | labeling or marking or otherwise designating it as such in accordance with this Protective Order, the
2 | designating party may give written notice to the receiving party that the document or thing produced
3 | is deemed Confidential Information, and that the document or thing produced should be treated as
4 | such in accordance with that designation under this Protective Order. The receiving party must treat
5 | the materials as confidential, once the designating party so notifies the receiving party. If the
6 | receiving party has disclosed the materials before receiving the designation, the receiving party must
7 | notify the designating party in writing of each such disclosure. Counsel for the Parties will agree on
8 | a mutually acceptable manner of labeling or marking the inadvertently produced materials as
9 | "CONFIDENTIAL" or "CONFIDENTIAL FOR COUNSEL ONLY" - SUBJECT TO
10 | PROTECTIVE ORDER.

11 | 17. Nothing within this Protective Order will prejudice the right of any Party to object to
12 | The production of any discovery material on the grounds that the material is protected as privileged
13 | or as attorney work product.

14 | 18. Nothing in this Protective Order will bar counsel from rendering advice to their
15 | clients with respect to this litigation and, in the course thereof, relying upon any information
16 | designated as Confidential Information, provided that the contents of the information must not be
17 | disclosed.

18 | 19. This Protective Order will be without prejudice to the right of any Party to oppose
19 | production of any information for lack of relevance or any other ground other than the mere
20 | presence of Confidential Information. The existence of this Protective Order must not be used by
21 | either Party as a basis for discovery that is otherwise improper under California Code of Civil
22 | Procedure.

23 | 20. Nothing within this Protective Order will be construed to prevent disclosure of
24 | Confidential Information if such disclosure is required by law or by order of the Court.

25 | 21. Upon final termination of this action, including any and all appeals, counsel for each
26 | Party must, upon request of the producing party, return all Confidential Information to the party that
27 | produced the information, including any copies, excerpts, and summaries of that information, or
28 | must destroy same at the option of the receiving party, and must purge all such information from all

1  machine readable media on which it resides. Notwithstanding the foregoing, counsel for each Party

2  may retain all pleadings, briefs, memoranda, motions, and other documents filed with the Court that

3  refer to or incorporate Confidential Information, and will continue to be bound by this Protective

4  Order with respect to all such retained information. Further, attorney work product materials that

5  contain Confidential Information need not be destroyed, but, if they are not destroyed, the person in

6  possession of the attorney work product will continue to be bound by this Protective Order with

7  respect to all such retained information.

8      21.   The restrictions and obligations set forth within this order will not apply to any

9  information that: (a) the Parties agree should not be designated Confidential Information; (b) the

10 Parties agree, or the Court rules, is already public knowledge; (c) the Parties agree, or the Court

11 rules, has become public knowledge other than as a result of disclosure by the receiving party, its

12 employees, or its agents in violation of this Protective Order; or (d) has come or will come into the

13 receiving party's legitimate knowledge independently of the production by the designating party.

14 Prior knowledge must be established by pre-production documentation.

15     22.   The restrictions and obligations within this order will not be deemed to prohibit

16 discussions of any Confidential Information with anyone if that person already has or obtains

17 legitimate possession of that information.

18     23.   Transmission by electronic mail with a copy sent by U.S. Mail is acceptable for all

19 notification purposes within this order.

20     24.   This Protective Order may be modified by agreement of the Parties, subject to

21 approval by the Court.

22     25.   The Court may modify the terms and conditions of this Protective Order for good

23 cause, or in the interest of justice, or on its own order at any time in these proceedings.

24

25

26

27

28

STIPULATED PROTECTIVE ORDER

1   IT IS SO STIPULATED.

2                                           POPE, BERGER & WILLIAMS, LLP

3

4   DATED: February 4, 2014                 By: _____
                                                Harvey C. Berger
5                                               Stephanie Reynolds
                                                Attorneys for Defendants/Cross-Complainants
6                                               RF LOGISTICS, LLC and BRIAN
                                                O'DONNELL
7

8                                           GRUENBERG LAW

9

10  DATED: February 4, 2014                 By: _____
                                                Joshua. D Gruenberg
11                                              Corey P. Hanrahan
                                                Benjamin S. Silver
12                                              Attorneys for Plaintiff/Cross-Defendant
                                                L. LEE BRIGHTWELL
13

14

15                                          _____

16  IT IS SO ORDERED this FEB 1 0 2014 day of _____, _____

17                                              RONALD S. PRAGER
                                                _____
18                                              Judge of the Superior Court

19

20

21

22

23

24

25

26

27

28

                                    10
                        STIPULATED PROTECTIVE ORDER

1
2
3
4
5

## <u>EXHIBIT A TO PROTECTIVE ORDER – AGREEMENT TO BE BOUND BY</u>
## <u>PROTECTIVE ORDER</u>

6

I, _____, have read the Protective Order issued in the above-referenced

7

8

matter dated _____ and I agree to be bound by its terms.  I agree to be subject to

9

the jurisdiction of the Court for purposes of enforcement of this agreement and the Protective Order.

10
11

Dated: _____        _____

12

(Signature)

13
14

_____

15

(Print Name)

16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATED PROTECTIVE ORDER

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO CENTRAL DIVISION | | COURT USE ONLY |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):   TELEPHONE NO.:<br>Harvey C. Berger (SBN 102973)    (619) 595-1366<br>Stephanie Reynolds (SBN 220090)    (619) 236-9677 - fax<br>**POPE, BERGER & WILLIAMS, LLP**<br>3555 Fifth Avenue, Suite 300<br>San Diego, California 92103 | | |
| SHORT CASE TITLE<br>*Brightwell v. RF Logistics, LLC, et al. & Related Cross-Action.* | | Judge:   Hon. Ronald S. Prager<br>Dept.:   C-71 |
| ATTORNEYS FOR DEFENDANTS/CROSS-COMPLAINANTS:<br>RF LOGISTICS, LLC and BRIAN O'DONNELL | DATE   TIME | CASE NUMBER<br>37-2013-00046163-CU-BC-CTL<br>**[IMAGED FILE]** |

## DECLARATION OF SERVICE

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California, within which county the subject service occurred. My business address is 3555 Fifth Avenue, Suite 300, San Diego, California 92103. On **February 11, 2014**, I served the following document(s):

**STIPULATED PROTECTIVE ORDER (filed on February 5, 2014 and executed by Judge Prager on February 10, 2014)**

on each addressee named hereafter and addressed as follows:

## SEE ATTACHED

[X]    **BY MAIL**  I sealed each envelope and, with the postage thereon fully prepaid, deposited each in our mail room in the ordinary course of business at San Diego, California, on **February 11, 2014.**  I am familiar with the business practice of this office for collection and processing of correspondence for mailing with the United States Postal Service, and the correspondence would be deposited with the United States Postal Service the same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 11, 2014** at San Diego, California

_Linda Loveland_

K:\5442\1POS.wpd

*Brightwell v. RF Logistics, LLC, et al. & Related Cross-Action.*
**San Diego Superior Court Case No. 37-2013-00046163-CU-BC-CTL**

<u>Person(s) Served</u>:

Joshua D. Gruenberg, Esq.
Corey P. Hanrahan, Esq.
Nik Djordjevski, Esq.
**Gruenberg Law**
2155 First Avenue
San Diego, CA 92101-2013
619/230-1234
619/230-1074 fax
josh@gruenberglaw.com
corey@gruenberglaw.com
nik@gruenberglaw.com

*Attorneys for Plaintiff/Cross-Defendant*
L. LEE BRIGHTWELL


Dan Friedenthal, Esq.
Jay D. Brown, Esq.
Kevin Heffernan, Esq.
Friedenthal, Heffernan & Klein, LLP
155 North Lake Avenue, Suite 430
Pasadena, CA 91101
626/628-2802-office
626/628-2828-fax
dfriedenthal@fhklegal.com
jbrown@fhklegal.com
kheffernan@fhklegal.com

*Co-Counsel for Defendants/Cross-Complainants*
RF LOGISTICS, LLC and BRIAN O'DONNELL

1
2
3
4
5

## EXHIBIT A TO PROTECTIVE ORDER – AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

6

I, _Joshua M. Heinlein_ have read the Protective Order issued in the above-referenced

7

matter dated _2/5/14_____ and I agree to be bound by its terms. I agree to be subject to

8

9

the jurisdiction of the Court for purposes of enforcement of this agreement and the Protective Order.

10

11

12

Dated: _8/6/14_____

_____
(Signature)

13

14

_Joshua M. Heinlein_____
(Print Name)

15
16
17
18
19
20
21
22
23
24
25
26
27
28