JOSEPH S. LEVENTHAL (221043)
joseph.leventhal@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Ph: (619) 400-0500; Fx: (619) 400-0501
*Attorneys for Plaintiff*
L. LEE BRIGHTWELL

HEATHER L. ROSING (183986)
hrosing@klinedinstlaw.com
DANIEL S. AGLE (251090)
dagle@klinedinstlaw.com
DOUGLAS W. LYTLE (178315)
dlytle@klinedinstlaw.com
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
Ph: (619) 239-8131; Fx: (619) 238-8707
*Attorneys for Defendants*
THE MCMILLAN LAW FIRM, APC; SCOTT
A. MCMILLAN and MICHELLE D. VOLK

SCOTT A. MCMILLAN (212506)
scott@mcmillanlaw.us
LAUREN HANLEY-BRADY (299644)
lbrady@tmlf.us
THE MCMILLAN LAW FIRM, APC
4670 Nebo Drive, Suite 200
La Mesa, CA 91941-5230
Ph: (619) 464-1500; Fx: (619) 828-7399
*Attorneys for Def./Counterclaimant*
THE MCMILLAN LAW FIRM, APC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, APC, a professional corporation, SCOTT A. MCMILLAN, an individual, MICHELLE D. VOLK, an individual, and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No. 16-CV-01696-W-NLS<br><br>**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS**<br><br>Date:         November 27, 2017<br>Courtroom:   3C<br>Judge:       Thomas J. Whelan<br>Magistrate Judge:  Nita L. Stormes<br>Complaint Filed:  June 30, 2016 |

## I.    INTRODUCTION

Pursuant to paragraph 3(h) of Judge Whelan's Chambers Rules, Plaintiff L. Lee Brightwell ("Brightwell"), and Defendant/counterclaimant The McMillan Law Firm, APC, defendant Scott A. McMillan ("McMillan") and defendant Michelle D. Volk (collectively "TMLF") hereby submit the following Joint Statement of Undisputed and Disputed Facts.

## II.    STATEMENT OF UNDISPUTED FACTS

Brightwell and TMLF contend the following facts are not disputed:

| UNDISPUTED FACTS | EVIDENCE |
|---|---|
| 1. On April 25, 2013, Brightwell filed a lawsuit in San Diego Superior Court against Brian O'Donnell and RF Logistics, LLC, *Brightwell v. O'Donnell, et al.*, Case No. 37-2013-00046163-CU-BC-CTL (the "O'Donnell action" or "underlying action"). | Declaration of Scott A. McMillan ("McMillan Dec."), ¶¶ 3 and 20; Def. Appx., Ex. D. |
| 2. On September 29, 2014, Brightwell retained TMLF to substitute in as her counsel in the underlying action, entering into a signed fee agreement for TMLF's services. | Declaration of L. Lee Brightwell ("Brightwell Decl."), ¶ 2; Plaintiff Appendix of Exhibits ("Pltf. Appx."), Ex. 1. |
| 3. The signed fee agreement between TMLF and Brightwell provides for reduced-rate hourly fees plus a 20% | Brightwell Decl., ¶ 2; Pltf. Appx., Ex. 1; McMillan Dec., ¶ 3. |

1.

| | |
|---|---|
| contingency fee, and includes a grant of an attorney's lien. | |
| 4. On March 15, 2015, TMLF sent Brightwell an invoice. | Brightwell Decl., ¶ 4. |
| 5. On May 31, 2015, TMLF sent Brightwell a 74-page invoice for $59,689.27. | Brightwell Decl., ¶ 4; Pltf. Appx., Ex. 2. |
| 6. TMLF did not send Brightwell an invoice between the March 15, 2015 invoice and the May 31, 2015 invoice. | Brightwell Decl., ¶4. |
| 7. On June 11, 2015, McMillan sent Brightwell two emails attaching a substitution of attorney form and stating:  "See attached.  Please sign and return for filing and service on Monday" and "You can fix the date." | Pltf. Appx., Ex. 3 |
| 8. On June 24, 2015, McMillan sent Brightwell an email. | Pltf. Appx., Ex. 4. |
| 9. On June 30, 2015, McMillan sent Brightwell an email. | Pltf. Appx., Ex. 5. |
| 10. On July 2, 2015 and July 3, 2015, | Pltf. Appx., Ex. 6. |

**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Brightwell and McMillan exchanged several emails. | |
| 11. On July 9, 2015, TMLF filed a motion to be relieved as counsel in the underlying action. | Pltf. Appx., Ex. 7. |
| 12. At the time TMLF filed the motion to withdraw as counsel for Brightwell in the O'Donnell Action, the parties were engaged in settlement discussions. | Brightwell Dec., ¶ 9. |
| 13. On July 13, 2015, McMillan forwarded to Brightwell an email from O'Donnell defendants' counsel Kevin Heffernan dated July 13, 2015, containing a settlement counteroffer. Brightwell emailed a response to McMillan, and McMillan emailed a reply to Brightwell. | Pltf. Appx., Ex. 8. |
| 14. On July 20, 2015, Brightwell filed a written opposition to McMillan's motion to withdraw. | Def. Appx., Ex. C. |
| 15. On July 30, 2015, McMillan sent Brightwell an email.  In the email, McMillan wrote: "I don't understand | Pltf. Appx., Ex. 9. |

3.

**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| why you don't just go through the bill, recalculate what is due, show what you have available to pay and just work it out? … Have you considered just paying your bill and keeping it paid and doing your trial." | |
| 16. On July 31, 2015, the court held a hearing on TMLF's motion to withdraw. A court reporter was present and transcribed the hearing. | Pltf. Appx., Ex. 10 |
| 17. On July 31, 2015, the court granted TMLF's motion to withdraw, to be effective upon TMLF's service of the court's order granting withdrawal. | Pltf. Appx Ex. 10, p. 17:3-5 (Doc. 57-10, p. 20 of 27). |
| 18. Brightwell hired new counsel, Joshua Heinlein, to represent her in the underlying action on August 4, 2015. | Brightwell Dec., ¶ 13. |
| 19. McMillan served the order granting withdrawal on August 5, 2015. | McMillan Dec., ¶20; Def. Appx., Exhs. D (corrected)[1] and E. |
| 20. On August 5, 2015, Mr. Heffernan's | Def. Appx., Ex. J (p. 4 of exhibit). |

[1] In the course of the meet and confer, it was discovered that defendants inadvertently filed the wrong document (an unsigned draft of different date) as Exhibit D to defendants' Appendix. The corrected Exhibit D (a Proof of Service signed and dated August 5, 2015) has been provided to plaintiff's counsel, and is being filed with the court under a Notice of Errata.

4.

| | |
|---|---|
| assistant e-mailed Mr. Heffernan advising him that Mr. Heinlein "would like discuss recent settlement negotiations." | |
| 21. Shortly after Brightwell retained Mr. Heinlein, McMillan assisted in bringing Mr. Heinlein up to speed on the case, and offered to try the case with Mr. Heinlein if he felt he was not sufficiently up to speed by the time of trial. | McMillan Dec., ¶21; Lytle Dec., ¶ 6-7; Def. Appx., Exs. K and L. |
| 22. On August 12, 2015, after attending an ex parte hearing, Mr. Heinlein sent McMillan an email stating, "Jay Brown was the one who appeared for Defendants – neither Heffernan or Berger were there – but I hope the message was sent.  After the hearing, I reiterated to Brown that you were being very helpful and would try the case with me if need be." | McMillan Dec., ¶22; Lytle Dec., ¶ 6-7; Def. Appx., Exs. K and L. |
| 23. On August 12, 2015, Mr. Heinlein sent an email to Mr. Heffernan and Mr. Berger (O'Donnell defense counsel) stating "Scott McMillan has been very | Lytle Dec., ¶ 7; Def. Appx., Ex. L. |

5.

| | |
|---|---|
| helpful in getting me up to speed" and "Additionally, he offered to try the case with me if I feel I am not sufficiently up to speed by the time the trial date rolls around.  Of course, as I have told both of you, I believe all of our clients would be best served by settling." | |
| 24. On August 17, 2017, Mr. Heinlein sent McMillan a letter to inform McMillan that the parties had agreed to settle "for payments from defendants totaling $435,000 ($410,000 up front and $25,000 paid in equal monthly installments). The language in the settlement agreement is still being finalized, but the parties have agreed on the principal terms…" | McMillan Dec., ¶23; Def. Appx., Ex. F. |
| 25. On August 28, 2015, McMillan sent Brightwell final invoice #10825 showing a total of $151,922.59, consisting of $64,922.59 in hourly attorneys' fees and costs, and $87,000 representing the 20%  contingency fee. | Pltf. Appx., Ex. 11. |
| 26. On November 19, 2015, Brightwell executed the final settlement agreement | Lytle Dec., ¶ 13; Def. Appx., Ex. R. |

6.

| | |
|---|---|
| in the O'Donnell Action. | |
| 27. The total amount of the settlement between Brightwell and the defendants in the underlying action was $435,000, with $410,000 paid immediately, and $25,000 paid in equal monthly installments ($1,000 mo. for 25 months). | Lytle Dec., ¶ 13; Def. Appx., Ex. R. |
| 28. Defendants in the O'Donnell action have paid the amounts due under the settlement agreement. | Lytle Dec., ¶ 4; Def. Appx., Ex. I, p. 72:20 to 74:1. |
| 29. $151,922.59 currently is held in trust ($10,462.34 in the McMillan Law Firm trust account, and $141,460.25 in the Dinsmore & Shohl trust account). $87,000 of the $151,922.59 represents the TMLF claim to a 20% contingent fee based on the $435,000 settlement in the O'Donnell Action. | Brightwell Dec., ¶¶ 13-14; Heinlein Dec., ¶ 2; Pltf. Appx., Ex. 11. |

## III.   DISPUTED FACTS

Brightwell and/or TMLF contend the following facts are disputed:

| **DISPUTED FACTS** | **EVIDENCE** |
|---|---|
| 1. On June 11, 2015, TMLF sent | Pltf. Appx., Ex. 3. |

7.

| | |
|---|---|
| Brightwell an email requesting that she sign a substitution of attorney form because she had not yet paid the invoice. | *Disputed by:* TMLF<br>*Reason disputed:* Misstates in Pltf. Appx., Ex. 3. On June 11, 2015, McMillan sent plaintiff Brightwell an email attaching a substitution of attorney form, and stating, "See attached. Please sign and return for filing and service on Monday" and "You can fix the date." (Doc. 57-3, Pltf. Appx. Ex. 3.) |
| 2. On June 24, 2015, TMLF sent Brightwell an email with the following subject line: "Brightwell – We need to get the bill resolved or I'm [sic] going to delay the heairng [sic]." In the email, TMLF wrote: "If we have a billing issue which has ripened into an actual conflict, and it appears that we do, I need to ask Judge Taylor to continue the in limine hearing. I don't want to spend anymore time on your case when you have offers on the table to settle but you aren't taking care of my billings." | Pltf. Appx., Ex. 4.<br>*Disputed by:* TMLF<br>*Reason disputed:* See McMillan Dec., ¶ 13. Plaintiff selects only a portion of email out of context to generate a disputed inference. On June 24, 2015, McMillan sent plaintiff an email concerned that Ms. Brightwell was not communicating and expressing concern about a conflict "if we have a billing issue" and explaining that he may need to ask that oral argument on motions in limine be continued if a conflict had arisen. The email said:<br>"Lee,<br>I left you a voice mail, and sent you a text message. Its been a while before you've responded to my calls. You have |

**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| | an affirmative obligation to keep me in communication, and to take care of the billings. |
| | If we have a billing issue which has ripened into an actual conflict, and it appears that we do, I need to ask Judge Taylor to continue the in limine hearing. I don't want to spend anymore time on your case when you have offers on the table to settle but you aren't taking care of my billings. |
| | Please let me know ASAP so that I can schedule an exparte before 7/02. Absent an affirmative statement, I'll schedule the exparte and ask that the oral argument on the in limine be continued as it appears that a conflict has arisen between my client and I. |
| | Scott" |
| | (Doc. 57-4, Pltf. Appx., Ex. 4.) |
| 3. On June 30, 2015, TMLF sent Brightwell an email with the following subject line: "Brightwell – I don't want to represent you anymore."  At the end of the email exchange, TMLF stated: "I'm going to argue your in limine. Then I'm gone.  Then we are done." | Pltf. Appx., Ex. 5. *Disputed by:*  TMLF *Reason disputed:*  See McMillan Dec. ¶ 15-16.  Plaintiff selects only a portion of email out of context to generate a disputed inference. In the first email of the exchange, |

9.

McMillan expressed concern with Brightwell's lack of communication, "You put me through a bunch of unnecessary effort with the silent treatment." McMillan viewed demands for better communication as "based in contract and the nature of our attorney client relationship," which McMillan said he took very seriously.

McMillan explained how he was forced to advance funds to vendors to maintain those relationships, and that he had to pay his employees to work on her case. McMillan also expressed concern that Brightwell wanted to "remake our deal" which had been a "chronic problem that keeps coming back."

McMillan further expressed his continued belief that "you actually have a case that has some value."

McMillan then addressed his concern regarding a conflict of interests, expressly stating, "You should engage another lawyer to review any settlement in light of the conflict between us if you do want me to try to settle it."

McMillan wished that Ms. Brightwell would "find someone else," but still

10.

| | |
|---|---|
| | agreed to remain engaged through the motion in limine rulings. The second email from McMillan reiterated that he would argue Brightwell's motions in limine. McMillan then re-emphasized the conflict issue, stating "You should bring in outside counsel to the extent that I handle any settlement communications. I will run it past them before I make any moves or suggest that you do so." (See Doc. 57-5, Pltfs. Appx, Ex. 5.) |
| 4. On July 2, 2015 and July 3, 2015, Brightwell and TMLF exchanged emails regarding the lengthy invoice Defendants had sent. | Brightwell Decl., ¶ 8; Pltf. Appx., Ex. 6. *Disputed by:* TMLF *Reason disputed:* On July 2, 2015 and July 3, 2015, Brightwell and TMLF exchanged emails. It mischaracterizes the exchange of emails to say they were "regarding the lengthy invoice Defendants had sent." For instance, the emails attached as plaintiff's Appx., Ex. 6 contain the following: 1. Brightwell's July 2, 2015 email to McMillan states, "As I worked beside you and your staff for 8 weeks, I acknowledge that a lot of effort was put into the preparation for trial and in |

11.

response to the defense shenanigans."
(Pltf's Appx., Ex. 6, Doc. 57-6 p. 5 of 5)

2.  Brightwell's July 2, 2015 email to McMillan states, "When we spoke in April, I told you we needed a new agreement from the one I signed in October 2014.  I can no longer pay in full immediately and will need to make monthly payments.  I hope you agree this is a reasonable way to proceed."
(Pltf's Appx., Ex. 6, Doc. 57-6 p. 5 of 5)

3.  McMillan replied to Brightwell on July 2, 2015 regarding her desire to renegotiate the fee agreement:  "In April you announced an arbitrary limit based on your desire to maintain money you believed you need to buy a house while simultaneously telling me you wanted me to carry the expense of your lawsuit." (Pltf's Appx., Ex. 6, Doc. 57-6 p. 4 of 5)

4.  McMillan replied to Brightwell on July 3, 2015 regarding her desire to renegotiate the fee agreement, expressing his conclusion that "no matter what deal I made or would make with you, you would try to cheat me out of payment."  (Pltf's Appx., Ex. 6, Doc.

12.

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| | 57-6 p. 2 of 5) |
| 5. In response to Brightwell's July 2 email requesting additional time to review the invoice, TMLF sent a one word response: "Unacceptable."  Later that day, TMLF sent a lengthier response stating that he believed Brightwell was attempting to "shift the risk of loss" in the underlying action to him.  He continued: "I warned you of the substantial potential expenses of litigation.  You should have been more interested in settling, sooner." | Pltf. Appx., Ex. 6<br>*Disputed by:*  TMLF<br>*Reason disputed:*  Plaintiff selects only a portion of email out of context to generate a disputed inference. The quoted portion of the "lengthier response" email omits the part where McMillan expressed concern with plaintiff's "effort…[to] renegotiate the contract." Plaintiff was seeking to renegotiate their fee agreement in tandem with negotiating settlement with defendants.<br>(Pltf's Appx., Ex. 6, Doc. 57-6 p. 4 of 5) |
| 6. On July 3, 2015, TMLF sent Brightwell an email.  In the email, TMLF wrote: "I allowed you to get $60k into me. I am the latest in a line of gullible lawyers . . . Me letting you get into me was an extremely foolish mistake. It was entirely foreseeable. But I am not going to compound it by "hanging on" and listening to more of your blandishments. Maybe you can find a really good attorney, i.e., Number Four | Pltf. Appx., Ex. 6<br>*Disputed by:*  TMLF<br>*Reason disputed:*  Plaintiff selects only a portion of email out of context to generate a disputed inference. McMillan's reply to Brightwell on July 3, 2015 addresses her previously discussed desire to renegotiate the fee agreement, and McMillan expresses his conclusion that "no matter what deal I made or would make with you, you |

13.

| | |
|---|---|
| who will listen to your story and advance fees for you. I actually am very stupid to have trusted you and to have allowed you to put me in this position. That you were going to draw some arbitrary line in the sand, and then not pay, was foreseeable when it became clear that you intended to foist the tedious work of preparing binders off on me and staff. That was work that you were capable of doing and rather had us do. That was never my intention that this take place . . . . I really don't care about your excuses, i.e., your effort to "get through the bill." That is all just more stalling. You had lots of time before that . . . . What you don't realize is that I have concluded that no matter what deal I made or would make with you, you would try to cheat me out of the payment. Even if this case settled for $1 million, you'd still try to take more than what the contract allows you. That is just how you are . . . . | would try to cheat me out of payment." (Pltf's Appx., Ex. 6, Doc. 57-6 p. 2 of 5) |
| 7. TMLF sent Brightwell numerous emails demanding that she pay the May 31 invoice. | Pltf. Appx., Exs. 3-9 *Disputed by:* TMLF *Reason disputed:* This is not a fact, but |

14.

DINSMORE & SHOHL LLP SAN DIEGO

| | |
|---|---|
| | rather an argument, based on disputed inferences as to the scope and nature of the issues addressed in the numerous referenced exhibits.  Plaintiff's exhibits 3-9 discuss the conflict of interest presented by Brightwell's stated desire and attempt to force McMillan to renegotiate the fee agreement at the same time they are negotiating settlement with the defendants, which caused McMillan to tell Brightwell multiple times to bring in outside counsel to handle any settlement communications due to the conflict. (See Doc. 57-5, Pltfs. Appx, Ex. 5.) |
| 8. On July 31, 2015, the court heard TMLF's motion to withdraw.  At the outset of the hearing, the court asked to hear from TMLF first.  TMLF summed up the reasons for withdrawing as follows: "the payment issues are still a problem." | Pltf. Appx., Ex. 10, 3:11 *Disputed by:*  TMLF *Reason disputed:*  This is argument rather than fact, or at best, is a disputed inference generated from taking a phrase divorced from the context.  It misstates the transcript in that McMillan was not "summing up" where this phrase is lifted.  McMillan referenced "not being paid *according to the agreement.*" (Pltf's Ex. 10, p. 3:17-18; Doc. 57-10 at p. 6 of 27.)  "According to the |

15.

**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

agreement was important" because of the ethical concerns arising from Brightwell's trying to renegotiate the fee arrangements while simultaneously trying to reach a settlement of her case with defendants.  This is shown as well where McMillan says, "ultimately *when I'm not in conflict with her*, I have to do what she says" (*id.* at p. 5:26-27) and "I have a fee dispute with her, and there's potential settlement out there and I feel conflicted at the moment" (*id.* at p. 6:1-6.)

McMillan did discuss payment issues, though mostly in response to the court's direct questions.  When court then asked, "Is payment the only issue?" McMillan discussed the conflict problem (*id.* at p. 5:26-27), and also discussed the "communications break down where Ms. Brightwell refuses to communicate with me," stating "where there's something of this magnitude, I need to be in communication." (*id.* at p. 4:24-27)  When Brightwell sought to insert settlement communications into the discussing, the court said it did not think it was appropriate "to use the

16.

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | pendency of a motion for leave to withraw and frankly use the Court as leverage for decided whether to accept or reject a settlement offer in the underlying case." (*id.* at p. 14:4-9.) McMillan then explained further, "I don't want to use this – Ms. Brightwell, I don't want to go into the conflict.  But as I said earlier on, I feel like I'm being placed in a conflict by this, being asked to make settlement judgments or nonjudgments during the pendency of this motion." (*id.* at p. 15:1-5.) |
|---|---|
| 9. During the hearing, TMLF insisted that it could continue to represent Brightwell if she simply paid the outstanding fees and provided some assurance that she would continue to pay his fees going forward. | Pltf. Appx., Ex. 10, 15:7-15. *Disputed by:* TMLF *Reason disputed:*  This is an argument rather than fact, and is not factually supported by the exhibit (transcript).  McMillan did discuss payment issues, though mostly in response to the court's direct questions.  When court then asked, "Is payment the only issue?" McMillan discussed the conflict problem (Pltf's Ex. 10, p. 5:26-27; Doc. 57-10, p. 8 of 27), and also discussed the "communications break down where Ms. Brightwell refuses to communicate |

17.

| | |
|---|---|
| | with me," stating "where there's something of this magnitude, I need to be in communication." (*id.* at p. 4:24-27) When Brightwell sought to insert settlement communications into the discussing, the court said it did not think it was appropriate "to use the pendency of a motion for leave to withraw and frankly use the Court as leverage for decided whether to accept or reject a settlement offer in the underlying case." (*id.* at p. 14:4-9.) McMillan then explained further, "I don't want to use this – Ms. Brightwell, I don't want to go into the conflict.  But as I said earlier on, I feel like I'm being placed in a conflict by this, being asked to make settlement judgments or nonjudgments during the pendency of this motion." (*id.* at p. 15:1-5.) |
| 10. The Court found in its Order Denying Defendants' Motion to Require Plaintiff to Post a Bond, "McMillan voluntarily withdrew over a fee dispute." | Dkt. No. 32, 6:24-25. Pltf. Appx., Ex. 10, 15:7-15. *Disputed by:*  TMLF *Reason disputed:*  Likelihood of prevailing for purposes of a bond under C.C.P. section 1080 is a different standard from whether there are triable |

18.

| | |
|---|---|
| | issues of fact for purposes of plaintiff's motion for partial summary judgment. Additionally, defendants' opposition evidence dispels some of the factual conclusions reached on the limited record before the court in the motion for a bond.  The court's ruling on the motion was based on an incomplete record, before any discovery, and where defendants' arguments had not squarely focused on the contingency fee issue. |
| 11. TMLF's "overwhelming and primary motivation" for withdrawal was the desire for immediate payment. | Dkt. No. 32, 6:27-7:1. Pltf. Appx., Ex. 10, 15:7-15. *Disputed by:*  TMLF *Reason disputed:*  Legal conclusion, and not a fact.  Likelihood of prevailing for purposes of a bond under C.C.P. section 1080 is a different standard from whether there are triable issues of fact for purposes of plaintiff's motion for partial summary judgment. Additionally, defendants' opposition evidence dispels some of the factual conclusions reached on the limited record before the court in the motion for a bond.  The court's ruling on the motion was based on an incomplete |

19.

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| | record, before any discovery, and where defendants' arguments had not squarely focused on the contingency fee issue. |
| 12. In September 2014, Brightwell and McMillan discussed the costs associated with taking her case to trial and the need for her to commit to reserving sufficient funds to do so, and Brightwell assured McMillan that she had $200,000 set aside to pay the McMillan Firm's fees and costs associated with getting the case ready for trial. | McMillan Dec. ¶ 4 and 11; Pltf's Appx., Ex. 6 (Doc. 57-6, p. 4 of 5.)<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit.  Specifically, Brightwell does not state that she "had $200,000 set aside to pay the McMillan Firm's fees and costs associated with getting the case ready for trial." |
| 13.  In September 2014, Brightwell told McMillan that her prior attorney had lost faith in her case, that it had only a 20% at best chance of winning in court, and was pushing Brightwell to settle for between $100,000 and $200,000. | McMillan Dec. ¶ 4; Lytle Dec., ¶ 2; Def. Appx., Ex. A; Def. Appx. Ex. G (MM0000143, third paragraph).<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. |
| 14. A letter from Brightwell's prior counsel concerning weaknesses and his view of her case and its value as of September 2014 was authenticated by | McMillan Dec. ¶ 4-5; Lytle Dec., ¶ 2; Def Appx., Ex. G.<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument |

20.

| | | |
|---|---|---|
| 1<br>2<br>3 | Ms. Brightwell in her November 2, 2017 deposition. | rather than fact, and is not factually supported. |
| 4<br>5<br>6<br>7<br>8<br>9 | 15. Before Brightwell retained TMLF, the highest settlement offer Ms. Brightwell had received was $125,000. | McMillan Dec. ¶ 5.<br>*Disputed by:* Brightwell<br>*Reason disputed:* This is an argument rather than fact, and is not factually supported. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | 16. When McMillan took over the case for Brightwell, trial was scheduled for November 21, 2014, but there still was significant discovery to complete and the case was not close to being ready. | McMillan Dec. ¶ 6; Def. Appx. Ex. A (BRIGHT014932: "the defendants have still not provided a great deal of the discovery requested…:<br>*Disputed by:* Brightwell<br>*Reason disputed:* This is an argument rather than fact, and is not factually supported. |
| 19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 17. Brightwell's case involved significant factual issues that had to deal with had the matter proceeded to trial. | McMillan Dec. ¶ 9; Lytle Dec., ¶ 4; Def. Appx., Ex. I (pp. 91:12-95:19, and 95:21-96:25); and Exs. M, N, O.<br>*Disputed by:* Brightwell<br>*Reason disputed:* This is an argument rather than fact, and is not factually supported. |
| 27<br>28 | 18. McMillan and his firm performed a considerable amount of work including | McMillan Dec. ¶ 10; Def. Appx., Ex. C, p. 2:16-19 ("[McMillan has spent eight |

21.

**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| conducting discovery and formulating a theory and strategy for trial.  In total, the McMillan Firm spent 1,245 hours working on Ms. Brightwell's case. | months compiling a strategy and exhibits to prove my case…The majority of the case preparation is complete.") *Disputed by:*  Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported.  Specifically, on July 2, 2015, when discussing the work that TMLF had performed, Brightwell informed McMillan "I know it has upset you in the past when I observed that there was a lot of rework, mismanagement of time, confusion and inefficiencies."  (Pltf Appx., Ex. 6)  Moreover, TMLF provided no evidence establishing that it had completed the "majority" of the work for the case. |
| 19. Brightwell acknowledged that McMillan and his firm put a lot of effort into the preparation for trial and in response to the defense shenanigans. | Pltf Appx., Ex. 6 (Doc. 57-6, p. 5 of 5) *Disputed by:*  Brightwell *Reason disputed:*  This is an argument rather than fact, and is not factually supported**.**  Plaintiff selects only a portion of email out of context.  Although Brightwell acknowledges McMillan's effort she also informs McMillan that he has been inefficient.  Specifically, on July 2, 2015, when |

22.

| | |
|---|---|
| | discussing the work that TMLF had performed, Brightwell informed McMillan "I know it has upset you in the past when I observed that there was a lot of rework, mismanagement of time, confusion and inefficiencies."  (Pltf Appx., Ex. 6 ) |
| 20. As a result of the work of McMillan and his firm, in March 2015, Ms. Brightwell received an offer of settlement from the defendants pursuant to California Code of Civil Procedure section 998 in the amount of $275,001. | McMillan Dec. ¶ 10; Def. Appx., Ex. B. *Disputed by:*  Brightwell *Reason disputed:* Legal conclusion, rather than fact, and is not factually supported. |
| 21. In April 2015, Brightwell told McMillan that she wanted to renegotiate the terms of the engagement agreement that was signed on September 29, 2014. | McMillan Dec. ¶ 11; Pltf's Appx., Ex. 6 (Doc. 57-6 p. 5 of 5.) <br><br> *Disputed by:*  Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit.  TMLF selects only a portion of email out of context. |
| 22. In April 2015, when Brightwell told McMillan that she wanted to renegotiate the terms of the engagement agreement and could no longer pay invoices in | McMillan Dec. ¶ 11; Pltf's Appx., Ex. 6 (Doc. 57-6, p. 4 of 5.) *Disputed by:*  Brightwell *Reason disputed:* This is an argument |

23.

| | |
|---|---|
| accordance with the agreement, Brightwell told McMillan that she decided to reserve $100,000 of her funds to purchase a home. | rather than fact, and is not factually supported by the exhibit.  Specifically, Brightwell does not state that she "decided to reserve $100,000 of her funds to purchase a home."  In addition, TMLF selects only a portion of email out of context. |
| 23. Ms. Brightwell continued to seek to renegotiate or modify the terms of the September 29, 2014 engagement agreement throughout June and July 2015. | McMillan Dec. ¶ 14; Def. Appx., Ex. C, p. 3:8-10, and 4:28 to 5:2. *Disputed by:*  Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. |
| 24. Brightwell was trying to seek to renegotiate the fee agreement in tandem with reaching a settlement with the O'Donnell defendants. | McMillan Dec. ¶ 15-16; Pltf. Appx, Ex. 5 (Doc. 57-5) *Disputed by:*  Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. |
| 25. While attorneys are free to bargain for the terms of their engagements at arms-length before the commencement of their relationship, there is a quantum change in the attorney's ability to | Lytle Dec., ¶ 15-17; Def. Appx., Exs. T, U, and V. *Disputed by:*  Brightwell *Reason disputed:* Legal conclusion, rather than fact, and is not factually |

24.

| | |
|---|---|
| bargain once the fiduciary duties of counsel are assumed. | supported. |
| 26. On July 20, 2015, Brightwell filed a written opposition to McMillan's motion to withdraw in which she stated, "I have also requested an amendment to my fee agreement with the McMillan Law firm…" | Def. Appx., Exh. C, p. 3:8-10, and 4:28 to 5:2. *Disputed by:* Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. TMLF selects only a portion of email out of context. |
| 27. Due to the conflict, McMillan advised Brightwell to consult another lawyer or outside counsel in relation to settlement communications with the defendants. | Pltf. Appx, Ex. 5 (Doc. 57-5); Lytle Dec., ¶ 11; Def. Appx., Ex. P (BRIGHT016867.) *Disputed by:* Brightwell *Reason disputed:* Legal conclusion, rather than fact, and is not factually supported. |
| 28. McMillan withdrew because of the conflict created by Brightwell trying to force McMillan to renegotiate their engagement agreement in tandem with negotiating settlement with the defendants. | McMillan Dec., ¶ 16; Pltf. Appx, Ex. 5 (Doc. 57-5); Lytle Dec., ¶ 3 and 14; Def. Appx., Exs. H and S. *Disputed by:* Brightwell *Reason disputed:* Legal conclusion, rather than fact, and is not factually supported. |
| 29. When McMillan withdrew from | McMillan Dec., ¶20; Lytle Dec., ¶ 6-7; |

| representation of Brightwell, he did not leave her lawyerless. | Def. Appx., Exs. D, E, K and L.<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument rather than fact. |
| --- | --- |
| 30. When McMillan withdrew from representation, he had spent eight months compiling a strategy and exhibits to prove Brightwell's case, and the majority of the case preparation was complete. | Def. Appx., Ex. C, p. 2:16-19; McMillan Dec. ¶ 14.<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. |
| 31. McMillan always believed in Brightwell's case and thought that she stood a good chance at prevailing if the case went to trial. | McMillan Dec., ¶ 17-18; Pltf. Appx., Ex. 5 (Doc 57-5)("you actually have a case that has some value")<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit. |
| 32. Before filing the motion to withdraw, McMillan argued motions in limine on behalf of Ms. Brightwell and was successful in getting a number of favorable rulings for Ms. Brightwell which significantly increased her chances of success at trial. | McMillan Dec., ¶ 18; Pltf. Appx., Ex. 10, p. 11:7-18 (Doc. 57-10, p. 14 of 27, lines 7-18); Def. Appx., Ex. P.)<br><br>*Disputed by:* Brightwell<br><br>*Reason disputed:* Legal conclusion, rather than fact, and is not factually supported. Specifically, TMLF did not |

26.

| | |
|---|---|
| | provide any evidence establishing that McMillan increased Brightwell's chances of success at trial. |
| 33. When Mr. Heinlein took over for McMillan, it was to "handle the settlement." | Lytle Dec., ¶ 4; Def.  Appx., Ex. I at p. 67:7-15.) *Disputed by:*  Brightwell *Reason disputed:* This is an argument rather than fact, and is not factually supported by the exhibit.  Mr. Heinlein advised Mr. Heffernan and Mr. Berger (O'Donnell defense counsel) that he was prepared to take underlying action to trial.  (Def. Appx., Ex. L.) |

DATED:  November 20, 2017        DINSMORE & SHOHL, LLP

                    By:  /s/ Joseph S. Leventhal_____
                        JOSEPH S. LEVENTHAL (221043)
                        Attorneys for Plaintiff
                        L. LEE BRIGHTWELL


DATED:  November 20, 2017        KLINEDINST P.C.

                    By:  /s/ Douglas W. Lytle_____
                        DOUGLAS W. LYTLE (178315)
                        Attorneys for Defendants
                        THE MCMILLAN LAW FIRM, APC;
                        SCOTT A. MCMILLAN and MICHELLE
                        D. VOLK

                        27.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Signature Certification**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is agreed and acceptable to Douglas W. Lytle and certify that I have obtained Mr. Lytle's authorization to affix his electronic signature to this document.

DATED:  November 20, 2017          DINSMORE & SHOHL, LLP

By: /s/ Joseph S. Leventhal
    JOSEPH S. LEVENTHAL (221043)
    Attorneys for Plaintiff
    L. LEE BRIGHTWELL

28.

JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT