JOSEPH S. LEVENTHAL (221043)
joseph.leventhal@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Ph: (619) 400-0500
Fx: (619) 400-0501

Attorney for Plaintiff
L. LEE BRIGHTWELL

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. LEE BRIGHTWELL, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE MCMILLAN LAW FIRM, APC, a professional corporation, SCOTT A. MCMILLAN, an individual, MICHELLE D. VOLK, an individual, and DOES 1 through 25, inclusive,<br><br>　　　　　　Defendants. | Case No. 16-CV-01696-W-NLS<br><br>**PLAINTIFF'S AMENDED REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　　　　October 9, 2017<br>Courtroom:　　　　3C<br>Judge:　　　　　　Thomas J. Whelan<br>Magistrate Judge:　Nita L. Stormes<br>Complaint Filed:　June 30, 2016 |

Plaintiff L. LEE BRIGHTWELL ("Brightwell") hereby submits the following reply in support of her Motion for Partial Summary Judgment.

## I. INTRODUCTION

Brightwell's Motion for Partial Summary Judgment presents a single question for consideration by the Court: whether The McMillan Law Firm's ("TMLF") voluntarily withdrawal as counsel of record in the underlying action bars TMLF from asserting a claim for a contingency fee. TMLF's Opposition does not contest the undisputed material fact that a payment dispute arose between Brightwell and TMLF. Any contrary evidence would be in TMLF's possession, defeating any argument that more discovery is necessary before the Court decides this straightforward issue.

Faced with the evidence that TMLF's overwhelming and primary motivation for withdrawal was the payment dispute, TMLF instead attempts to create a triable issue of fact by belatedly claiming that TMLF withdrew because the payment dispute created an alleged ethical issue. But the Court need only read the transcript from the withdrawal hearing to understand that this litigation-inspired explanation for withdrawal was never previously raised by TMLF. TMLF's argument is the exception that swallows the rule: under TMLF's theory, every payment dispute equals an ethical issue that entitles a lawyer to withdraw and still collect the contingency fee.

Notably, although TMLF argues that a request to modify the fee agreement created ethical issues, there was no mention by TMLF of the request to modify the fee agreement in the withdrawal motion or during the hearing before Judge Taylor. Further, there is no case law or evidence supporting the claim that a simple request to modify a fee agreement creates an ethical conflict. TMLF's arguments of the parade or horribles that can occur under a modified fee agreement are irrelevant. There was no modified fee agreement here. TMLF was free to continue representing Brightwell under the original fee agreement, possibly forcing

1.

Brightwell to find other representation if she no longer agreed to the terms. Finally, TMFL's last-ditch attempt to claim that Brightwell somehow conspired to force McMillan to withdraw as counsel of record is also inaccurate and contrary to the undisputed facts.

Because TMLF entirely fails to demonstrate a genuine issue of material fact, this Court should grant Brightwell's partial summary judgment as to the contingency fee portion of her fifth claim for declaratory relief, and as to the contingency fee portion of TMLF's first, second, third, fourth, fifth, sixth, and tenth counterclaims.

## II. DESPITE THE OPPOSITION, NO TRIABLE ISSUES OF FACT EXIST.

Although TMLF claims this motion involves highly disputed facts, TMLF implicitly concedes that TMLF's voluntary withdrawal arose primarily out of a payment dispute. While TMLF opposed this motion, TMLF failed to dispute the following uncontroverted facts in its opposition that Brightwell identified in its moving papers.

- On May 31, 2015, TMLF sent Brightwell a 74-page invoice for $59,689.27. (Brightwell Decl., ¶ 4; Appx., Ex. 2; Opp., at 8:20-21.)
- The May 31 invoice was the first invoice that Brightwell received since March 15, 2015. (Brightwell Decl., ¶ 4; Opp., at 8:20-21.)
- Prior to the May 31, 2015 invoice, all of TMLF's invoices had been timely paid. (Appx., Ex. 6.)
- Because of the surprisingly large invoice spanning multiple months, Brightwell informed TMLF that she could no longer pay in full immediately and will need to make monthly payments. (Appx., Ex. 6.)
- On June 11, 2015, just 11 days after issuing the May 31 invoice, TMLF sent Brightwell an e-mail demanding that she sign a substitution of attorney form because she had not yet paid the invoice. (Appx., Ex. 3.)

2.

- On July 9, 2015, less than 45 days after presenting Brightwell with the May 31 invoice, TMLF filed a motion to be relieved as counsel. (Appx., Ex. 7.)
- TMLF sent Brightwell numerous emails demanding that she pay the May 31 invoice. (Appx., Exs. 3-9.)
- During the hearing on the motion to withdraw, McMillan summed up the reasons for withdrawing as follows: "the payment issues are still a problem." (Appx., Ex. 10, 3:11.)
- TMLF's overwhelming and primary motivation for withdrawal was the desire for immediate payment. (Dkt. No. 32, 6:27-7:1.)
- The Court already found in its Order Denying Defendant's Motion to Require Plaintiff to Post Bond that "McMillan voluntarily withdrew over a fee dispute." (*Id. at* 6:24-25.)

These uncontroverted facts are sufficient to establish that TMLF did not withdraw as counsel with justifiable cause and, thus, Brightwell is entitled to partial summary judgment.

## III. TMLF HAD NO JUSTIFIABLE CAUSE FOR WITHDRAWING AS COUNSEL.

By providing a protracted and perplexing explanation of the fee dispute, TMLF attempts to transform a simple fee dispute into a conflict of interest justifying its withdrawal as counsel. TMLF claims that Brightwell's alleged attempt to renegotiate the fee agreement somehow caused an actual conflict of interest. (Opp., at 14:16-26.) Despite all evidence to the contrary, TMLF inexplicably claims that Brightwell's alleged attempt to renegotiate the fee agreement was McMillan's "overwhelming and primary motivation for withdrawing." (Opp., at 14:16-18.) TMLF ignores the record, which clearly establishes that TMLF's entire motivation for withdrawal was the billing dispute; not Brightwell's request to renegotiate the fee agreement. The Court need only review the transcript from the withdrawal hearing to determine definitively that

3.

TMLF's reason for withdrawal was the fee dispute and TMLF never raised Brightwell's request to renegotiate the fee agreement or any other purported ethical concern.

Underscoring the evidence that TMLF withdrew solely due to the fee dispute, on numerous occasions, TMLF insisted that it could continue to represent Brightwell if she simply paid the outstanding fees and provided some assurance that she would continue to pay his fees going forward. (Appx., Ex. 10, 15:7-15.) While TMLF claims that it had communication issues with Brightwell and disagreements regarding strategy (Appx., Ex. 10, 4:24-27, 5:2-28, 6: 1-12), this did not rise to the level of a compelling conflict of interest because TMLF stated that he would not withdraw if the fee dispute was resolved. *See Rus*, *Miliband & Smith v. Conkle & Olesten*, 113 Cal. App. 4th 656, 675 (2003) (a "break down" in communication did not constitute justifiable grounds for permissive withdrawal).

While TMLF engages in a lengthy discussion, including numerous citations to case law and treatises, regarding the ethical dilemmas attorneys face in amending a fee agreement, none of these authorities are relevant. (Opp., at 8-18.) There was no modification of the fee agreement. TMLF was free to continue to represent Brightwell under the terms of the agreement they previously reached. But he was not free to withdraw over a dispute over payment and continue to collect his contingency fee. Further highlighting that TMLF did not withdraw due to an ethical conflict was Mr. McMillan's willingness to try the case with Brightwell's new counsel with no concern to any alleged conflict of interest. (Def. Appx. Ex. L.)

Even if TMLF can claim that it withdrew primarily because of an alleged attempt to renegotiate the fee agreement, which it cannot, TMLF failed to cite any case holding that a disagreement regarding an existing fee agreement permits counsel's withdrawal to be deemed justifiable. As such, TMLF failed to establish that a fee dispute or an attempt to renegotiate a fee agreement constitutes a "most

4.

compelling" ethical dilemma allowing TMLF's permissive withdrawal to be deemed justifiable under *Falco* or *Rus*.

Importantly, TMLF failed to show how TMLF's actions did not constitute the same type of bet hedging discouraged in *Falco* and *Rus*. Here, disappointed that his client disputed her bill and concerned that he would not get paid going forward, TMLF voluntarily withdrew from the representation with the hedge that, if Brightwell did settle the case or obtain judgment, he would be able recover under his contingency fee claim without having to bear the risk of the additional cost of litigation, cost of going to trial, and potentially losing. Essentially, as described in *Rus*, TMLF shifted the time, effort, and risk of obtaining the recovery to the client, and TMLF seeks to obtain the same free ride that the *Rus* court disfavored. *Rus*, 113 Cal. App. 4th at 675-676. Consequently, TMLF failed to identify any compelling facts to justify its withdrawal entitling it to the contingency fee.

## IV. *FALCO* DID NOT CREATE A SEPARATE *QUANTUM MERUIT* RECOVERY FOR A WITHDRAWING ATTORNEY.

TMLF misconstrues *Falco* and *Rus* to incorrectly conclude that a withdrawing attorney can recover under *quantum meruit* solely on the basis that the client settled for substantially similar terms after the attorney's withdrawal. (Opp., at 21:2-5.) Both *Falco* and *Rus* establish that an attorney that voluntarily withdraws from a contingency fee case must provide a compelling justification to support his withdrawal in order to recover in *quantum meruit*. *See Falco*, 188 Cal. App. 3d at 1014 ("recovery for services in quantum meruit is allowed only when the attorney has *justifiable* cause for withdrawing") (emphasis in original); *Rus*, 113 Cal. App. 4th at 672 ("Any claim to a subsequent recovery depends on whether the attorney had 'justifiable cause so as to permit a recovery of compensation.'"). While *Falco* proposes that a substantially similar settlement could support a *quantum meruit* claim if the attorney withdrew over a client's refusal to accept a settlement, those are not the facts here. To the contrary, TMLF filed its motion to withdraw before

5.

any purportedly similar settlement was offered to Brightwell (and then rejected). (Appx., Exs. 7-8.)

In addition, *Falco*'s proposition is only dicta as the court failed to hold that the withdrawing attorney in that case qualified for a *quantum meruit* recovery. Indeed, no California case has cited *Falco* for the proposition posed by TMLF: that a withdrawing attorney can recover in *quantum meruit* without providing a compelling justification for his withdrawal if the client later agrees to a settlement that is substantially similar to a settlement offer received prior to the attorney's withdrawal. Consequently, TMLF must still prove that its withdrawal was justifiable. As explained above, the undisputed facts establish that TMLF's voluntary withdrawal was not justified and, therefore, TMLF is not entitled to recover the contingency fee.

## V.   *FALCO* AND *RUS* DO NOT REQUIRE THAT THE CLIENT BE LEFT LAWYERLESS.

TMFL misconstrues *Falco* and *Rus* to claim that an attorney who already secured an order to withdraw as counsel of record, but delayed filing the proof of service of the order, somehow does not effectively leave a client lawyerless. (Oppo., at 22:28-23:7). Both the holding of *Falco* and *Rus* are clear—when an attorney (1) withdraws as counsel and (2) does so without a justifiable cause he is no longer entitled to a contingency fee award—there is no requirement that client be left lawyerless. *Rus*, 113 Cal.App.4th at 672-673 (citing *Falco*, 188 Cal.App.3d at 1015). There is nothing in *Falco* and *Rus* that suggests the Court should engage in an analysis regarding how long a client is left lawyerless or the specific consequences of withdrawal. For example, would McMillan make the same argument if the proof of service was filed and Brightwell was without an attorney for 30 days, but nothing material occurred during those 30 days? Such an analysis is not supported by *Falco* and *Rus* nor is McMillan's position.

Because McMillan withdrew as counsel of record and failed to establish any justifiable cause, the rule under *Falco* and *Rus* precludes any recovery for contingency fees regardless of whether McMillan effectuated the withdrawal before or after Brightwell secured another attorney. Simply because Brightwell was proactive in retaining counsel after McMillan obtained the order to withdraw does not somehow preclude the applicability of *Falco* and *Rus*. Indeed, even if Brightwell had secured counsel the same day that McMillan withdrew, McMillan's withdrawal still shifted the risk of losing at trial to Brightwell. This shifting of risk to the client is precisely the type of improper free ride that the *Rus* court sought to prohibit. *Rus*, 113 Cal. App. 4th at 675-676. Moreover, Brightwell's retention of new counsel does not prevent the application of *Rus* and *Falco*, which preclude McMillan from improperly benefiting from his withdrawal. Finally, by claiming that Brightwell intentionally engineered a scheme to "deprive McMillan of a contingency fee," McMillan essentially concedes that his actions result in the forfeiting of any right to the contingency fee. (Oppo., at 23:6-7).

## VI. TMFL'S SPECULATIVE CLAIM THAT BRIGHTWELL ENGINEERED MCMILLAN'S WITHDRAWAL IS CONTRARY TO THE UNDISPUTED FACTS THAT MCMILLAN INSTIGATED HIS OWN WITHDRAWAL.

TMFL's claim that Brightwell somehow conspired to force McMillan to withdraw as counsel of record is inaccurate and contrary to the undisputed facts. (Oppo., at 23:6-7). Further, TMFL's allegation that Joshua M. Heinlein ("Heinlein") researched *Falco* and *Rus* before McMillan filed the proof of service of the withdrawal order is a red herring. Brightwell and Heinlein categorically deny that they in any way conspired to force McMillan to file the proof of service so that he would no longer be entitled to the contingent fee. (Brightwell Decl., ¶8; Heinlen Decl., ¶3). It is undisputed that McMillan secured an order of withdrawal, served it on Brightwell, and communicated to Brightwell that he was going to file with the court the proof of service of the order of withdrawal. (Brightwell Decl.,

¶13; Appx., Ex. A; Def. Appx. Exs. D, W; Appx., Ex. 10). McMillan took all of these steps without prompting by Brightwell. (Def. Appx. Exs. D, W; Appx., Ex. 7, 10). Moreover, Brightwell had no control over the court's decision to allow McMillan additional time to serve the order of withdrawal instead of granting the withdrawal that same day in court. (Appx. Ex. 10, 15:7-15). As such, to argue that Brightwell somehow concocted a scheme to hire another attorney first and then force McMillan to file the proof of service is spurious.

TMFL also mischaracterized the record by claiming that McMillan was not aware that Brightwell was seeking new counsel. Indeed, between July 31, 2015 and August 3, 2015, McMillan advised Brightwell that he was withdrawing as counsel and requested information from her regarding her new counsel. (Brightwell Decl., ¶¶5-6; Appx. Exs. A-B). Moreover, on Sunday August 2, 2015, McMillan served the order granting the withdrawal and advising Brightwell that he would advise her of the filing of the proof of service with the Superior Court. (Def. Appx. Ex. W). Having been served with an order granting the withdrawal and receiving McMillan's emails rightly caused Brightwell to believe that McMillan was withdrawing as counsel immediately. (Brightwell Decl., ¶5). As a result, on August 4, 2015, Brightwell sought new counsel to represent her in the underlying action given that trial was fast approaching and she was without counsel. (Brightwell Dec., ¶7). Heinlein informed Brightwell that he was unable to represent her in the underlying matter until McMillan filed the proof of service with the court. (Heinlein Dec., ¶2). This prompted Brightwell to send an email to McMillan advising him to file the proof of service. (Def. Appx. Ex. E). During the intervening five days before filing his proof of service with the court, McMillan did nothing to suggest to Brightwell that he was going to continue to represent her. As such, this entire argument is a red herring.

///

///

**VII. CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in her Motion for Partial Summary Judgment, Brightwell respectfully requests that this Court grant her Motion.

DATED: February 21, 2018          DINSMORE & SHOHL, LLP

By: /s/ Joseph S. Leventhal
    JOSEPH S. LEVENTHAL (221043)
    Attorney for Plaintiff
    L. LEE BRIGHTWELL

12361996